CITY OF MISHAWAKA, Indiana, on behalf of its Department of Redevelopment, Appellant-Plaintiff,

v.

FRED W. BUBB FUNERAL CHAPEL, INC., Appellee-Defendant.

No. 3–279A34.

Court of Appeals of Indiana, Third District.

Nov. 27, 1979.

Rehearing Denied Jan. 14, 1980.

R. Wyatt Mick, Jr., David V. Bent, Mishawaka, for appellant-plaintiff.

John W. Schindler Jr., Schindler & Olson, Mishawaka, for appellee-defendant.

HOFFMAN, Judge.

As a part of its federally-funded downtown business district renewal program, the Department of Redevelopment of the City of Mishawaka (the City) sought to acquire certain real estate owned and used by Fred W. Bubb Funeral Chapel, Inc. (Bubb). When Bubb rejected an offer to purchase the property the City instituted condemnation proceedings. Trial was had on Bubb's amended objections to the condemnation, which were thereafter overruled.

After a hearing on Bubb's motion to correct errors, however, the trial court reversed itself and ordered a new trial. In its written opinion filed with that order the court concluded that the City's compliance with IC 1971, 8–13–18.5–8 (Burns Code Ed.) was a condition precedent to the filing of a condemnation suit. The City brings this appeal from the order granting a new trial, arguing that the court below erroneously construed the provisions of the Indiana Relocation Assistance Act, IC 1971, 8–13–18.5–1, et seq. (Burns Code Ed.).

The Indiana Relocation Assistance Act is modeled after the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 which is found at 42 U.S.C. § 4601 et seq. Moreover, it is clear from a reading of the entire Indiana Act that the General Assembly intended it to complement the Uniform Act, thus requiring local and state agencies which acquire property to provide relocation programs in instances when those agencies are not required to do so by Federal law.

■ That a significant degree of cooperation between Federal and Indiana agencies was foreseen at the time the Indiana Act was passed is evidenced by the following provision:

"(a) Any agency acquiring real property or engaging in code enforcement activities pursuant to a program under which federal financial assistance is or will be available to pay the cost thereof shall be authorized to enter into an agreement with the appropriate federal agency under which the agency agrees to provide such relocation assistance services and payments as may be required or authorized under the Uniform Relocation Assistance and Land [sic] Acquisition Policies Act of 1970, as the same may be amended or superseded from time to time, and to utilize any available federal funds therefor. For such purpose the agency utilizing federal financial assistance shall be authorized to make such contracts and expenditures and to do such acts and make such rules, orders and findings as may be necessary to comply with the provisions of such federal law and the rules, regulations and interpretations pertaining thereto, as promulgated by the appropriate federal agencies.

"(b) Any agency acquiring real property or engaging in code enforcement activities with federal financial assistance and which is subject to the requirements of the Federal Uniform Relocations [sic] Assistance and Real Property [sic] Policies Act of 1970, as the same may be amended or superseded from time to time, shall not be required to make relocation payments or provide relocation assistance programs under the provisions of this chapter [8–13–18.5–1—8–13–18.5–20], or to comply with any procedures, rules or regulations un-

der this chapter which may be inconsistent with applicable federal law or regulations, if such agency complies with all provisions of applicable federal law and regulations relating to relocation payments and assistance for persons displaced by the project."

IC 1971, 8–13–18.5–16 (Burns Code Ed.). The City's urban renewal project, of which the acquisition of Bubb's property was a part, was funded by the United States Department of Housing and Urban Development (HUD). Thus, to the extent required by the funding agreement between the City and HUD, the City was obligated to provide relocation assistance in accordance with the Uniform Act. IC 1971, 8–13–18.5–16(a). Insofar as it was not so obligated, the City was bound to follow the Indiana Act. IC 1971, 8–13–18.5–16(b); IC 1971, 8–13–18.5–1.

The need to distinguish between the Indiana Act and the Uniform Act is, however, obviated in the instant case by the fact that the provisions at issue appear in virtually identical form in each of the two acts. Both acts require that two types of relocation assistance be provided by agencies acquiring real property: (1) payments for moving and other expenses incurred by persons displaced from their homes or businesses [IC 1971, 8–13–18.5–3—8–13–18.5–7 (Burns Code Ed.); 42 U.S.C. §§ 4622–4624]; and, (2) relocation advisory services [IC 1971, 8–13–18.5–8 (Burns Code Ed.); 42 U.S.C. § 4625].

When it rendered its decision in favor of Bubb the trial court relied upon two Federal cases which had construed portions of the Uniform Act: *Barnhart v. Brinegar* (W.D. Mo., 1973), 362 F.Supp. 464; *Tullock v. State Highway Commission of Missouri* (CA 8, 1974), 507 F.2d 712. An examination of these decisions discloses, however, that neither addressed the question of whether an agency must give relocation assistance as a condition precedent to filing a condemnation action to acquire the real property occupied by a business. Consequently, nei-ther is authority for the result reached below.

The City appears to mount a two-pronged attack on the judgment below. It argues (1) that an offer of relocation assistance which was made after the condemnation suit was instituted constituted compliance with the statute(s); and (2) that Bubb is not entitled to assistance until it is actually displaced from the property condemned. These contentions differ only in the manner in which they are presented and raise but one issue for this Court's consideration: Must the City furnish relocation assistance to Bubb before filing a condemnation action to acquire Bubb's property?

■ As noted earlier in this opinion, the statutory provisions governing the payment of moving and other expenses are found at IC 1971, 8–13–18.5–3—8–13–18.5–7 and at 42 U.S.C. §§ 4622–4624. Enumerated in those provisions are the payments to which displaced persons may be entitled. For purposes of the Uniform Act, 42 U.S.C. § 4601 defines "displaced person" as follows:

"As used in this chapter—

\*    \*    \*    \*    \*    \*

(6) The term *'displaced person' means any person who,* on or after January 2, 1971, *moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property*, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance; and solely for the purposes of sections 4622(a) and (b) and 4625 of this title, as a result of the acquisition of or as the result of the written order of the acquiring agency to vacate other real property, on which such person conducts a business or farm operation, for such program or project.    .    ."[1] (Emphasis added.).

It is clear from this definition that a person does not become a "displaced person" until

1. The parallel Indiana provision is found at IC 1971, 8–13–18.5–2(d) (Burns Code Ed.).

that person is required to relocate due to the acquisition of the real property which such person occupies. It follows that such a person is entitled to the payments described in IC 1971, 8–13–18.5–3—8–13–18.5–7 and in 42 U.S.C. §§ 4622–4624 only after the real property he occupies has been acquired by an agency, whether by negotiated purchase or by condemnation.

Similarly, a person is not entitled to relocation advisory services until the agency involved acquires real property and such acquisition renders such person's relocation inevitable, for IC 1971, 8–13–18.5–8 and 42 U.S.C. § 4625 require that such services be provided only to displaced persons. *See, Alexander v. U. S. Dept. of Housing & Urban etc.* (1979), 441 U.S. 39, at 60, 99 S.Ct. 1572, at 1586, 60 L.Ed.2d 28, at 44–45.

Because relocation assistance is available only to displaced persons and because a person becomes a displaced person only after the real property he occupies is acquired by an agency, it follows that an agency cannot be required to furnish relocation assistance to any person as a condition precedent to exercising its power to acquire that person's property.

Accordingly, the judgment below is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

GARRARD, P. J., and STATON, J., concur.