UNITED STATES of America,
Plaintiff-Appellee,

v.

410.69 ACRES OF LAND, MORE OR
LESS IN ESCAMBIA COUNTY, STATE
OF FLORIDA, and Perdido Key, Inc., et
al., and Unknown Owners, Defendants,

Perdido Key, Inc., Defendant-Appellant.

No. 79–2228
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1979.

Rehearing Denied Jan. 23, 1980.

John R. Farrell, Buchbinder & Elegant,
Ira M. Elegant, Miami, Fla., for defendant-
appellant.

Nickolas P. Geeker, U. S. Atty., Pensaco-
la, Fla., Anne S. Almy, James W. Moorman,
Jacques B. Gelin, Atty., Dept. of Justice,
Washington, D. C., Arnold M. Weiner,
Atty., Dept. of Justice, Miami, Fla., for
plaintiff-appellee.

Before AINSWORTH, FAY and RAN-
DALL, Circuit Judges.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

PER CURIAM:

We are called upon in this appeal to determine whether on the facts of the case before us the Government abandoned its condemnation proceedings within the meaning of Section 304(a)(2) of the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654(a)(2) (1976), so as to entitle the landowner to reimbursement of the litigation expenses incurred by it in the proceedings. The district court, relying on its perception of the rationale of the Ninth Circuit in *United States v. 4.18 Acres of Land*, 542 F.2d 786 (9th Cir. 1976), concluded that for an abandonment to exist within the meaning of the statute, the Government must intend to abandon the land acquisition project as a whole. We hold, as did the district court, that there was no abandonment of the proceedings within the meaning of the Act, and therefore we affirm. However, because we reach our result in this case on a different and narrower ground, we do not reach the question of whether the district court's construction of the statute was correct.

On May 16, 1974 the United States Government filed a Complaint in Condemnation in the United States District Court for the Northern District of Florida seeking through the power of eminent domain to take for public purposes three tracts of land owned by Defendant-Appellant Perdido Key, Inc. The three tracts to be condemned were located in the Perdido Key, in Escambia County, Florida. The purpose of the acquisition was to add the subject tracts to the federally owned Gulf Islands National Seashore. Before filing the complaint, the United States, through the National Park Service under whose aegis the Gulf Islands National Seashore is administered, offered Perdido Key, Inc. [hereinafter Perdido Key] $1,795,500 for the three tracts in question. After filing the complaint the Government commissioned a current appraisal of the property to reflect the market value of the property at about the time of the condemnation.[1] Upon receiving the results of the appraisal, the Government realized that the cost of acquiring the three tracts would in all likelihood exceed the monies available for the project pursuant to the current Congressional appropriation. Thereafter, during the pendency of discovery in the condemnation proceeding, the Government attempted to negotiate the purchase of the largest of the three tracts (denominated tract 05–110), but was unsuccessful.

The record does not fully disclose the progress of the negotiations or the reasons for the failure of those negotiations. It is evident, however, that there were a number of contested issues between the parties. Ultimately, of course, what was in dispute was the proper compensation due the landowner for the contemplated taking. Obviously, the landowner thought the initial offer of less than $2,000,000 for all three tracts was far too low. It can be inferred that the Government, after receiving the results of its appraisal, recognized that its initial offer for the three tracts was indeed too low. What valuation was placed on the property by that appraisal does not appear in the record.

In connection with the condemnation action, Perdido Key propounded interrogatories to the Government asking for, along with other information, a statement of the result of the Government-commissioned appraisal of the property and a description of the appraisal method used. The Government answered none of the interrogatories. In a letter notifying the district court of its decision to dismiss the action, the Government explained that it believed the disclosure of the information sought by the interrogatories would be detrimental to the ongoing, and to future, negotiations for the

---

1. We note in passing that in this case the Government may have totally disregarded § 301 of the Act, 42 U.S.C. § 4651, which suggests the policy federal agencies ought to follow in seeking to acquire land. Congress, however, made it clear that § 301 creates no rights in landowners; in essence that provision is no more than a statement by Congress of what it perceives to be the preferred method of dealing with landowners when the Government wants to acquire their land. *See* 42 U.S.C. § 4602(a).

purchase of the property. Since the Government had anticipated success in its attempt to negotiate the purchase of tract 05–110, and had contemplated dismissal of the whole action in the event those negotiations were unsuccessful, the Government suggested that answering the interrogatories would have served no purpose except to hinder negotiations. The Government concluded by advising the district court that if Congress appropriated additional monies in the future for the Gulf Islands National Seashore project, and if subsequent negotiations with the landowners for the purchase of the land at issue proved to be unsuccessful, the Government intended to refile the condemnation action. The Government filed a Notice of Dismissal of the Action pursuant to Fed.R.Civ.P. 71A(i), on March 12, 1974.

In 1976 Congress authorized increased expenditures for land acquisition to benefit the National Seashore. Act of October 21, 1976, 90 Stat. 2732, 16 U.S.C. § 459h–10. On July 19, 1977, anticipating the possibility of renewed efforts on the part of the United States to acquire the land, Perdido Key entered into a modification of its 1973 agreement with Mr. Farrell, the attorney Perdido Key had retained to represent its interests in the condemnation proceedings. Whereas the 1973 agreement was a contingent fee arrangement that included no explicit provision about fees in the event no "judgment, award or settlement" was obtained regarding the valuation of the property, the modification (some three years and four months *after* the Government's dismissal) provided for, *inter alia*, a fee of 3⅓% of the first offer the Government might subsequently make for the property, regardless of whether the land was actually acquired by the United States. Thereafter, the Government began negotiations with Perdido Key for the purchase of these same three tracts. On November 8, 1977, the Government offered Perdido Key $5,565,000 for the land. The landowner countered with a suggested price of $6,599,-909. The Government agreed to this price and acquired the property by purchase on December 1, 1977. According to Mr. Far-

rell's Affidavit in Support of Perdido Key's Motion for Attorney Fees and Costs, following the sale of the property Perdido Key paid Mr. Farrell $219,974.97 for attorney fees pursuant to the 1977 contract, and reimbursed him for costs in the amount of $12,000. On June 5, 1978, Perdido Key filed a Motion to Assess and Award Attorney Fees and Costs, to which the Government did not respond. The district court suggested that the parties attempt to agree on a reasonable award in the case. These negotiations produced no agreement, however, and on January 25, 1979 a hearing was held in chambers on the matter. On March 20, 1979 the district court entered its order denying Perdido Key's motion for attorney fees and costs in the case, from which Perdido Key appeals.

The only question before us on this appeal is whether Perdido Key is entitled to recover from the Government any litigation expenses actually incurred in the condemnation proceeding, pursuant to § 304(a), 42 U.S.C. § 4654(a), which provides:

(a) The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if—

(1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or

(2) the proceeding is abandoned by the United States.

We hold that in the particular circumstances presented by this case the policy of the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. §§ 4601–55, would be disserved by an award of litigation expenses, and therefore we affirm the district court's denial of the motion for such an award. However, our rationale differs from that relied upon by the district court.

The district court was correct in recognizing that the legislative history of the Act supports a restrictive reading of the statute. Clearly Congress intended to create only a narrow exception to the general rule of nonrecovery for litigation expenses in condemnation cases when it enacted § 304(a).[2] Reading § 304(a) in its entirety, we do not think the statute was intended to require reimbursement by the Government of the litigation expenses actually incurred by a landowner in a condemnation proceeding voluntarily dismissed by the Government when the landowner subsequently sells the land to the Government for his asking price, particularly when the landowner asks the district court to order reimbursement after successfully concluding the sale. It is at the very least anomalous that the fees the landowner in this case wishes to charge to the Government because of the dismissal of the condemnation proceedings were calculated as a percentage of the amount received by the landowner when it sold its property to the United States. If, when a motion to recoup litigation expenses is filed in the district court, the Government has not already purchased the land in question from the landowner, we might well reach a different result notwithstanding the Government's intention to take the property at some future time. Here, however, before it even filed the motion to recoup its litigation expenses, Perdido Key had been paid the price it asked for the land. Under these circumstances we think an award of litigation expenses to the landowner would run contrary to the intent of Congress in enacting § 304(a).

AFFIRMED.

---

**2.** *See* H.R.Rep. No. 91–1656, 91st Cong., 2d Sess., reprinted in 1970 U.S. Code Cong. & Admin.News, pp. 5850, 5875. After paraphrasing the section on litigation expenses, the committee report states: "Ordinarily the Government should not be required to pay expenses incurred by property owners in connection with condemnation proceedings. The invitation to increased litigation is evident." *See also United States v. 4.18 Acres of Land*, 542 F.2d 786, 788–89 (9th Cir. 1976).

