**TENNESSEE GAS PIPELINE CO., Plaintiff,**

v.

**104 ACRES OF LAND, MORE OR LESS, IN PROVIDENCE COUNTY OF The STATE OF RHODE ISLAND, et al., Judith B. Moreau, Walter R. and Clara J. Lawrence, Defendants.**

Civ. A. Nos. 89–0780, 89–0782.

United States District Court,
D. Rhode Island.

July 16, 1993.

**124**

Peter V. Lacouture, Christine M. Gravelle, Paul M. Sanford, Fran R. Robins–Liben, Tillinghast, Collins & Graham, Providence, RI, for plaintiff.

Robert S. Bruzzi, Law Offices of Robert S. Bruzzi, Providence, RI, Morton L. Simons, Barbara M. Simons, Simons & Simons, Washington, DC, for defendants Lawrence and Moreau.

## OPINION

FRANCIS J. BOYLE, Senior District Judge.

Plaintiff Tennessee Gas Pipeline Co. (Tennessee Gas) brought eminent domain proceedings against Defendants Judith Moreau and Walter and Clara Lawrence to obtain interests in their land in order to construct and maintain a natural gas pipeline. Plaintiff changed the route of its pipeline and dismissed the eminent domain proceedings against the defendants. Defendants have moved for attorney's fees, pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act (Relocation Act), 42 U.S.C. § 4601 et seq.

### FACTS

In November, 1986, Tennessee Gas applied to the Federal Energy Regulatory Commission (FERC) under the provisions of the Natural Gas Act (the Act), 15 U.S.C.A. 717f(c), for a certificate of public convenience and necessity to condemn certain property in order to construct and operate a pipeline from its Massachusetts facility to a termination point in Cranston, Rhode Island. At the outset of this litigation the plaintiff did not seek to condemn any property interest of the defendants. Later, due to changes in the routing an easement was sought in the Lawrence property. Later still the plaintiff dismissed the action involving the Lawrence property and sought to condemn a site and an easement on the Moreau property. FERC was notified of the proposed changes in the pipeline route by letter in or about May, 1988.

Shortly after revising the pipeline route, Tennessee Gas met with Defendant Moreau in an attempt to purchase an easement which was needed for construction of the pipeline. Ms. Moreau advised Tennessee Gas that her property had historical significance and was eligible for registration on the National as well as the State Registers of Historic Places. Moreau told Tennessee Gas that she was not interested in selling her property or granting an easement for construction of the pipeline.

In May, 1989, FERC approved Tennessee Gas' initial pipeline route. Upon learning of this order, Moreau sought to intervene in the proceedings before the FERC. During this same period, Tennessee Gas sought to have the 1989 order modified to include the revisions it had made to the pipeline route in 1988. Before FERC could act on Tennessee Gas' motion to amend, Tennessee Gas filed an action in this court, seeking a condemnation order for that portion of the Moreau property needed for the pipeline construction.

In September, 1990, FERC granted Tennessee Gas' motion to amend its pipeline route. This modification routed the pipeline around the Lawrence property and through that of Moreau. Moreau moved for and was granted a rehearing by FERC. In Novem-

ber, 1990, this court issued an order condemning a portion of the Moreau property. Moreau appealed to the First Circuit Court of Appeals.

In July, 1991, Tennessee Gas notified Moreau that it was seeking approval of another change in the pipeline route which would reroute the pipeline around her property. The First Circuit dismissed Moreau's appeal as premature because FERC was actively reconsidering the pipeline route. In September, 1991, FERC approved Tennessee Gas' second revision to its pipeline route. On April 13, 1992, pursuant to Fed.R.Civ.P. 71A(i)(1), Tennessee Gas dismissed its condemnation actions against the Moreau and Lawrence properties.

The defendants seek costs and attorneys' fees based on the Real Property Acquisition Policy Act of 1970, 42 U.S.C. § 4654 (1983), Rule 11 of the Federal Rules of Civil Procedure, and Section 1927 of the Judicial Code, 28 U.S.C. § 1927 (West Supp.1993). Defendants claim that jointly they are entitled to $85,310.00 for fees. Plaintiff has also moved for costs and attorney's fees in the amount of $500.00.

## DISCUSSION

■ Turning first to the defendants' motion for fees. There is no basis for fees under Rule 11 of the Federal Rules of Civil Procedure or Section 1927 of the Judicial Code because defendants have not presented any evidence of unnecessary multiplication of proceedings or bad faith by Tennessee Gas. Defendants' claim of fees under the Relocation Act does, however, present more difficult issues. Defendants' fee request under the Relocation Act raises two questions: (1) Whether the Relocation Act is applicable to Tennessee Gas and, if so, (2) Whether Defendants have satisfied the requirements for establishing reasonable attorney's fees as required.

The regulation of natural gas companies is governed by the Natural Gas Act (the Act). 15 U.S.C. § 717 et seq. Section 717f(c) of the Act states:

No natural-gas company ... shall ... undertake the construction or extension of any facilities [for the transportation or sale of natural gas] ... unless there is in force with respect to such natural gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations.

15 U.S.C.A. § 717f(c)(1)(A) (West Supp.1993). The Act authorizes natural gas companies to condemn specific land. Section 717f(h) of the Act, entitled Right of Eminent Domain for Construction of Pipelines, Etc., provides that:

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, a pipe line or pipe lines ... it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located.

15 U.S.C.A. 717f(h) (1976). The Act has been viewed as vesting private companies with the power to acquire land by an exercise of the federal power of eminent domain. *Thatcher v. Tennessee Gas Transmission Co.*, 180 F.2d 644, 648 (5th Cir.1950), *cert. denied,* 340 U.S. 829, 71 S.Ct. 66, 95 L.Ed. 609 (1950); *see also Transcontinental v. 118 Acres of Land,* 745 F.Supp. 366 (E.D.La. 1990); *Columbia Gas Transmission Corp. v. An Exclusive Gas Storage Easement, et al.,* 578 F.Supp. 930, 933 (N.D.Ohio 1984), *aff'd* 776 F.2d 125 (6th Cir.1985); *Tennessee Gas Transmission Co. v. Cleveland Trust Co. et al.,* 67 Ohio Law Abs. 264, 120 N.E.2d 143, 144 (1953). Thus, in limited circumstances, the Act confers upon natural gas companies the power of eminent domain. Tennessee Gas' complaints sought condemnation of interests in the Moreau and Lawrence properties. Tennessee Gas asserted that, by virtue of Section 717f(h), it possessed the right to acquire the properties by eminent domain.

The defendants argue that they are entitled to be reimbursed under the provisions of the Relocation Act. The manner in which the government acquires private property for public use "is governed, to some extent by the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, 42 U.S.C.

§ 4601 et seq." *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 5–6, 104 S.Ct. 2187, 2192, 81 L.Ed.2d 1 (1984). The judicial history of the act is significant. Section 4621(b) states the policy of the Act with respect to relocation assistance:

This subchapter establishes a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance. The primary purpose of this subchapter is to ensure that such persons shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons.

42 U.S.C.A. § 4621(b) (West Supp.1993).

The Act provides for benefits to displaced persons for such expenses as moving and relocation and personal property lost as a result of the displacement. Much of the litigation which took place had to do with persons displaced by residential developments which although encouraged by the government were essentially private developments. *See Austin v. Andrus*, 638 F.2d 113 (9th Cir.1981); *Dawson v. HUD*, 592 F.2d 1292 (5th Cir.1979); *Conway v. Harris*, 586 F.2d 1137 (7th Cir.1978).

In *Moorer v. HUD*, 561 F.2d 175, 181–182 (8th Cir.1977), *cert. denied* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978), the court pointed out a number of efforts to amend the Act to include persons displaced as beneficiaries of the Act where the developer was not a governmental entity but a private developer of Federally assisted projects. The effort was finally successful in 1987 with the enactment of the Uniform Relocation Act Amendments of 1987 (Relocation Act Amendments). Congress chose to make those private developers who had authority to acquire property by eminent domain under Federal law subject to the same obligations to displaced persons as governmental entities. Section 4601(1) of the Relocation Act defines the term "Federal agency". Federal agency is defined as:

any department, agency or instrumentality in the executive branch of the Government, any wholly owned Government corporation, the Architect of the Capitol, the Federal Reserve Banks and branches thereof, *and any person who has the authority to acquire property by eminent domain under Federal law.* (Emphasis added)

42 U.S.C.A. § 4601(1) (West Supp.1993). The inclusion of the language "any person who has the authority to acquire property by eminent domain under Federal law" was added to Section 4601(1) by the Uniform Relocation Act Amendments of 1987.

Section 4654(a) of the Relocation Act provides that:

[t]he Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if—

(1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or

(2) the proceeding is abandoned by the United States.

42 U.S.C.A. § 4654(a) (1983). The obvious purpose of Section 4654 is to restore the property owner to the position the owner was in prior to the eminent domain proceeding if the proceeding misfires. If the conditions of the statute are met, the Federal Court having jurisdiction of the condemnation or proceeding "instituted by a Federal Agency ... shall award the owner ... reasonable attorney ... fees." *Id.* Tennessee Gas is deemed a Federal Agency by Section 4601(1) of the Act.

Plaintiff argues that since Tennessee Gas is not the "United States", the United States did not abandon the eminent domain proceeding. Tennessee Gas argues that 42 U.S.C.A. § 4654(a)(2) applies only to proceedings abandoned by the United States. In Tennessee Gas' view, it cannot be responsible for litigation expenses because it is not the United States. Plaintiff's argument

would deny the purpose of the Relocation Act. It is obvious that the term "United States" was used to give the statute its broadest possible scope, including not only all Federal Agencies but all other governmental entities including Congress.

Section 4654(a)(2) allows a property owner to recover litigation expenses only when the government has initiated a formal condemnation proceeding and then abandoned it. *Hellenic Center, Inc. v. Washington Metropolitan Area Transit Auth.,* 815 F.2d 982, 983 (4th Cir.1987). *See United States v. Bodcaw Co.,* 440 U.S. 202, 204, 99 S.Ct. 1066, 1067, 59 L.Ed.2d 257 (1979). House Report No. 91–1656, 91st Cong., 2d Sess., U.S.Code Cong. & Admin.News 1970, pp. 5850, 5874 describes the purpose of Section 4654(a)(2) of the Act as follows:

> [Section 4654(a)] would authorize the reimbursement of owner of any right, or title to, or interest in real property for reasonable expenses of litigation including legal, appraisal and engineering fees, actually incurred because of the taking of real property by Federal agencies, where ... (2) the Government abandons a condemnation.

Tennessee Gas further contends that the condemnation proceedings were not abandoned. Tennessee Gas argues that the existence of the pipeline evidences that the condemnation proceedings were never abandoned. This argument, however, fails upon examination. Tennessee Gas filed multiple complaints to condemn various parcels of land, including the defendants', for the construction of a natural gas pipeline. Each of the complaints is a separate condemnation proceeding involving a distinct parcel of land. After the condemnation actions began, FERC approved rerouting the pipeline to avoid both the Moreau and Lawrence properties. As a result of the re-routing, Tennessee Gas dismissed its condemnation complaints concerning the Moreau and Lawrence properties. Although the pipeline has been constructed, its construction did not involve either of the defendants' property.

Tennessee Gas has abandoned proceedings concerning the Moreau and Lawrence properties. In determining whether a proceeding has been abandoned courts have recognized that dismissal of an action does not automatically constitute abandonment. Much can be learned from precedents dealing with abandonment which focus on when a condemnation proceeding is not abandoned. In *United States v. 410.69 Acres of Land More or Less, Etc.,* 608 F.2d 1073 (5th Cir.1979), the government filed a complaint in condemnation seeking through eminent domain to take three tracts of land. The parties engaged in negotiations during the proceedings. The government dismissed the action but informed the court that, if additional monies became available and if negotiations failed, it would refile the condemnation action. Eventually, the parties negotiated a sale of the property. After the sale, the landowner sought litigation expenses under Section 4654(a). The Fifth Circuit held that the statute was not intended to require the government to pay litigation expenses in a condemnation proceeding voluntary dismissed by the government after the landowner has sold the property to the government. *Id.* at 1076. The court noted, however, that a different conclusion might result if the government had not purchased the property when the landowner filed his application for reimbursement for legal fees. *Id.* In *United States v. 4.18 Acres of Land, More or Less, Etc.,* 542 F.2d 786 (9th Cir.1976) (per curiam), the district court had dismissed the government's condemnation proceeding as premature. The government appealed and then dismissed its appeal and announced a new condemnation proceeding would be started. The new proceeding was filed within a year of the dismissal. The court of appeals held that the action had not been abandoned within the meaning of Section 4654(a). The court noted that a different result may have occurred if the government had not asserted its intent to file a new action and in fact filed that action before the appeal. *Id.* at 789.

In this action, the court dismissed the action on Tennessee Gas' motion and not the defendants'. There is no indication that Tennessee Gas intends to refile the action or obtain the property through other means. In addition, the completion of the pipeline obviates Tennessee Gas' future need for the

property. The reason for the dismissal is relevant. Tennessee Gas could condemn land only along a route certified by FERC. In both actions dismissed at the behest of Tennessee Gas, the dismissal was prompted by a change in the route of the pipeline location directed by FERC. FERC is a federal agency and acts on behalf of the United States. The dismissals were caused by an action of the United States in initially approving the route to pass within the Lawrence and Moreau properties and a later determination to change the route by an agency of the United States at the request of Tennessee Gas. The facts taken collectively establish an abandonment by the United States whether or not Tennessee Gas is an entity within the term "United States" as used in the statute. This is exactly the type of mischief that the statute was intended to remedy.

Next, having determined that the reimbursement scheme of the Relocation Act was triggered, the court must decide what the defendants are entitled to recover. Section 4654(a) provides that the court shall award landowners:

> such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney ... fees, actually incurred because of the condemnation proceedings.

The defendants were represented by two law firms, Simons & Simons (Simons) and The Law Offices of Robert S. Bruzzi (Bruzzi). Simons contends that it spent 65.6 hours representing the Lawrences at a rate of $150 per hour for a charge of $9,840. Simons further contends that it expended 404.6 hours representing Moreau at a rate of $150 per hour for a charge of $60,690. Bruzzi alleges it spent 41.5 hours representing the Lawrences at a rate of $150 per hour for a charge of $6,225 and 42 hours representing Moreau at the same rate for a charge of $6,300.

█ Under Section 4654(a), the court has the obligation of determining the reasonableness of such costs and fees. To determine the reasonableness of the fee applications the lodestar analysis will be employed. Under the lodestar approach, the court computes a lodestar amount by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate for the attorney's services. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

█ It is necessary therefore to determine the hours reasonably applied, the reasonable rate of compensation to be allowed, and the amount of reasonable expenses incurred. For fee awards, the First Circuit requires that attorneys provide a "full and specific accounting of their time." *King v. Greenblatt*, 560 F.2d 1024, 1027 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). A full and specific accounting should include, among other information, the different tasks each attorney performed, total number of hours, billing rate, the dates when specific tasks were performed and the amount of time spent on each task specified. *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir.1986). In *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir.1984), the First Circuit warned that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." The Supreme Court has noted that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1940. Detailed, contemporaneous time records allow a court to determine the reasonableness of the time spent on particular issues in the litigation. Detailed time records also allow the party from whom payment is sought to review and dispute the reasonableness of the charges and the accuracy of the records. *Calhoun v. Acme Cleveland Corp.*, 558 F.2d at 560.

Simons' initial submission failed to itemize the amount of time spent on each specified task. At a hearing on the defendants' motion for costs and attorneys' fees, Tennessee Gas requested that more detailed information be provided. After the hearing, Simons filed time summaries from which it alleged the earlier submissions were compiled. Tennes-

see Gas argues that these submissions are untimely and lack the detail required by *Grendel's Den.* The submissions of Simons are not sufficiently detailed contemporaneous time records of the Simons firm. They are summaries of time spent without allocation to specific tasks. In contrast, Bruzzi has filed his original "chargeable time slips" which appear to be in order.

■ In determining the number of hours to be reasonably applied the court starts with the number of hours reportedly spent on tasks and subtracts "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939. Where two firms represent the same clients it is necessary to review the application to determine whether there are excessive or repetitive fees within each firm and between each of the firms. The lack of detail of the Simons' time sheets makes this task essentially impossible. The time summaries furnished are replete with time charges for such matters as "Confer with co-counsel," "Confer with client," "Review materials," "Review additional materials," "Review documents," "Review documents and maps," and "Legal Research" without any indication of the subject matter involved. Further, when more than a single service was provided, the services are combined, and there is no information concerning what part of the total charge is allocated to each service. Bruzzi's submission does not suffer from the same lack of detail.

The failure to include some description of the subject matter of the task causes several problems. Without knowing what was researched, conferenced, or reviewed the court is unable to determine if the hours charged were unnecessary and redundant or warranted. In addition, without any indication of the subject matter, it is impossible to determine if the time factor allocated to that task is appropriate or excessive.

Furthermore, Simons' submissions raise questions as to their accuracy and whether such records were contemporaneously kept. In reviewing Simons' two proffers concerning its fee, there are several discrepancies between the firms' time summaries and its original submission. These discrepancies are troubling because Simons reportedly derived its original submissions from the time summaries. For instance, the original submission reports that for September, 1990 services were performed on nine separate days for a total of 17.2 hours. The time summaries reveal that for the same period work was performed on only five days; the number of hours billed, however, remained at 17.2. Similarly, there are several instances where the original submission describes a specific task such as research, or conference with co-counsel but the time summary does not list such a task. Even with these omissions, the number of hours billed on each submission remained constant. At points the time summaries describe tasks and list dates that were not listed in the original submission.

Another difficulty arose when the submissions of both firms were cross referenced. In two instances, the firms listed different times for the same tasks. For example, on March 30, 1990, and June 28, 1990, both firms noted that they conferred with their co-counsel. The firms, however, allotted different times to these discussions. According to Simons those discussions lasted twice as long as local counsel. On two other occasions, September 16, 1991 and October 30, 1991, Simons billed for consulting with co-counsel. Local counsel had no corresponding listing.

■ Simons' time summaries do not provide sufficient detail for a determination of the reasonableness of specific charges. In addition, the time summaries of Simons indicate that within that firm there may have been some duplication of effort. Between the two firms any duplication appears to be minimal. The only alternative available in these circumstances is to substantially reduce or totally deny compensation. *Grendel's Den v. Larkin,* 749 F.2d at 952. There is no doubt that defendants' counsel rendered valuable services to their clients and that the clients obtained a substantial benefit. It is not appropriate to deny counsel fees completely for failure to document the efforts. However, a substantial reduction is in order. Simons' fees will be reduced by thirty percent (30%). Bruzzi's application will be granted in full.

■ Under the lodestar approach, a court must also review the reasonableness of the requested rate of compensation. "The reasonable hourly rate is usually stated to be 'that prevailing in the community for similar work.'" *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir.1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 892 (D.C.Cir.1980)); *see Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Thus, the reasonable hourly rate for Rhode Island applies. Each firm has requested a fee of $150.00 per hour. Neither firm presented any evidence as to the prevailing rate in Rhode Island, however, based on this court's knowledge the rate of $150 per hour is appropriate for work of the nature done in these actions. Therefore, reasonable fees are determined to be:

| Law Firm | Hours | Rate | Claimed | Rate Allowed | Hours Allowed | Fee Allowed |
|---|---|---|---|---|---|---|
| Simons | 470.2 | $150 | $70,530 | $150 | 329.14 | $49,371 |
| Bruzzi | 83.5 | $150 | $12,525 | $150 | 83.5 | $12,525 |

Defendants also seek reimbursement for their expenses. Simons seeks $173.75 for court fees and transcript, $194.77 duplicating and mailing, $115.36 for telephone and fax, and $289.92 for travel for a total $773.80. Simons charged each defendant with $386.90 in expenses. From October, 1990 until November, 1991, Simons additionally seeks $86.88 for court fees and transcript, $493.67 for duplicating and mailing, $397.49 for telephone and fax and $144.96 for travel for a total of $1,123. Bruzzi requests $105.00 for court fees, $496.72 for duplicating and mailing and $133.05 for telephone and fax for a total of $734.77. Bruzzi divides the expenses as $419.88 to Moreau and $314.89 to the Lawrences. The $105.00 difference results from the filing fee of Moreau's appeal. Thus, the firms seek a total of $645.90 for telephone and fax and $1,185.16 duplicating and mailing. Plaintiff has not made any serious objection to these charges and they are allowed.

Tennessee Gas has filed a motion requesting it be awarded costs and attorney fees incurred in defending against the defendants' motion for attorney fees. Tennessee Gas argues that the same issues were raised during the condemnation proceedings and that the defendants are merely attempting to relitigate issues that have been decided. Prior to Tennessee Gas' abandonment of the condemnation proceedings, the defendants did not have a claim under the Relocation Act.

Once Tennessee Gas abandoned the condemnation proceedings, the defendants had a claim for attorney fees under the Relocation Act. This issue had not been previously decided. Therefore, Tennessee Gas' motion is denied.

### Conclusion

Tennessee Gas has abandoned its condemnation proceedings directed at the property of the defendants. Pursuant to 42 U.S.C.A. § 4654(a), the defendants are entitled to reasonable fees and expenses actually incurred because of the condemnation proceeding, totalling fees to Simons in the amount of $49,371 and fees to Bruzzi in the amount of $12,525 and expenses to Simons in the amount of $1,896.80 and expenses to Bruzzi in the amount of $734.77. Tennessee Gas' motion for attorney fees and costs is denied.