**CITY OF HAMMOND, Indiana, a Municipal Corporation, Appellant–Plaintiff,**

v.

**MARINA ENTERTAINMENT COMPLEX, INC.; AXG Corp; Great Lakes Inland Marina, Inc.; Auditor of Lake County, Indiana; and Treasurer of Lake County, Indiana, Appellees–Cross–Appellants–Appellees.**

No. 45A03–9511–CV–389.

Court of Appeals of Indiana.

June 13, 1997.

14. We do not decide whether Beshear's elections were, in fact, timely.

Joseph Stalmack, Joseph Stalmack & Associates, Hammond, David W. Weigle, Hammond, Patrick J. Galvin, Galvin, Galvin & Leeney Hammond, for appellant.

Terrance L. Smith, Smith & DeBonis, East Chicago, for appellee Great Lakes Inland Marina Inc.

William C. Barnard, Steven C. Shockley, Mary T. Doherty, Sommer & Barnard, PC, Indianapolis, for appellees cross-appellants Marina Entertainment Complex, Inc. and AXG Corp.

## OPINION

HOFFMAN, Judge.

Appellant-plaintiff-cross-appellee City of Hammond, Indiana ("City"), a Municipal Corporation, appeals an award of attorney's fees and expenses in favor of appellees-defendants-cross-appellants Great Lakes Inland Marina, Inc. ("Great Lakes"), Marina Entertainment Complex, Inc. ("M.E.C."), a lessee of Great Lakes, and AXG Corp. (AXG) (collectively Great Lakes, M.E.C., and AXG will be referred to as "Landowners") in an eminent domain proceeding. The facts relevant to this appeal are presented below.

The City of Hammond qualified as a site for a gaming license. As part of the project, the City sought to construct an overpass and roadway to gain access to its new marina, its lake shore, and the anticipated gaming development. The project required the City to take from the Landowners, by way of eminent domain, a right-of-way for a public road and overpass and to effect a railroad relocation. On September 20, 1993, the City entered into a letter of intent with Lake Michigan Charters, Ltd. (Charters), a river boat casino gaming company, whereby the City agreed to exclusively endorse Charters for the gaming license. In turn Charters agreed to pay for construction of the public roadway and other costs arising therefrom. In relevant part, the letter of intent provided:

The City, to the extent permitted by law, and [Charters] specifically agree to cooperate to expedite the acquisition of necessary property for the railroad overpass and the design and construction of the overpass, and the City shall, to the extent permitted by law, use its powers of eminent domain to acquire right-of-way for the railroad overpass.

Thereafter, Charters hired American Consulting Engineers, Inc. (ACE) to design the overpass project (the Project) and to designate the property necessary for relocation of railroad tracks and construction of the Project. The property was to be purchased by Charters or, in the alternative, acquired by exercise of the City's power of eminent domain.

Following the service of unacceptable offers to purchase required by IND. CODE § 32–11–1–2.1 (1993 Ed.), the City filed a complaint for condemnation against the Landowners. On June 17, 1994, the City filed a second complaint against the Landowners to acquire additional land for the same project. The two cases were later consolidated. Landowners filed numerous objections arguing that the taking was not for a public purpose, and the City's offers to purchase were not made in good faith. On September 20, 1994, after a hearing, the trial court entered an order pursuant to IND. CODE § 32–11–1–5 (1993 Ed.), overruling the Landowners' objections to the condemnation proceedings and appointing appraisers to ascertain just compensation to the Landowners for their property interests. Subsequently, M.E.C. and AXG filed an interlocutory appeal.

On November 17, 1994, while the Landowners' appeal was still pending before this Court, the City advised both the trial court and the Landowners that Amtrack would not consent to the relocation of certain railroad tracks. Consequently, the Project had to be redesigned. The new drawings required less of Great Lakes and M.E.C.'s property and none of AXG's property be taken by the City.

M.E.C and AXG filed a motion for relief from the September 20, 1994 order, pursuant to Ind. Trial Rule 60(B), which was subsequently granted by the trial court. Thereafter, M.E.C. and AXG applied to this Court requesting a *nunc pro tunc* order requesting leave to file their T.R. 60(B) motion. On January 11, 1995, this Court conditionally granted the motion, ordered the pending motions stricken, and relinquished jurisdiction to the trial court for 60 days for the court to rule on any new T.R. 60(B) motions. The Landowners' new motions for relief from the trial court's September 20, 1994 order were granted.

On February 13, 1995, Great Lakes filed a motion for summary judgment arguing that the City no longer wanted the Landowners' property for the intended use described in its complaint. Great Lakes' motion was not ruled upon. Instead, the City filed an amended complaint pursuant to Ind. Trial Rule 15, which was ultimately denied. The City also filed a motion to dismiss without prejudice pursuant to Trial Rule 41(A)(2). On February 23, 1995, the trial court dismissed the case without prejudice. Thereafter, the trial court entered an order dismissing its February 23, 1995 order finding that it was without jurisdiction to enter a dismissal and referred the matter to this Court.

On March 20, 1995, this Court issued an order relinquishing appellate jurisdiction which in effect returned jurisdiction to the trial court for an additional 60 days so that the trial court could rule on all motions or petitions then pending or filed after the trial court resumed jurisdiction. The City then filed another motion to dismiss without prejudice pursuant to Ind. Trial Rule 41(A)(2). The City's motion to dismiss was granted. The trial court further retained jurisdiction to adjudicate Landowners' petition for fees and costs.

On April 7, 1995, the City refiled an eminent domain action against Great Lakes and M.E.C. A second cause of action was not filed against AXG. Thereafter, Landowners filed their petitions for damages pursuant to the previous order of the trial court. The trial court's jurisdiction was extended for an additional 120 days, during which time a hearing was held on Landowners' petitions for damages. On August 3, 1995, the trial court entered an order awarding Great Lakes $300,000 in fees and expenses and M.E.C. and AXG $350,000. The City now appeals and the Landowners cross-appeal.

The City raises two issues for review:

(1) whether the trial court erred in awarding attorney's fees to the Landowners; and

(2) whether the award of $650,000 in attorney's fees was excessive.

On cross-appeal the Landowners raise three additional issues:

(3) whether the trial court abused its discretion in allowing the City to dismiss its action prior to ruling on Great Lakes' summary judgment motion;

(4) whether the trial court erred in failing to award M.E.C. and AXG certain rental, appraisal and engineering expenses; and

(5) whether M.E.C. and AXG are entitled to appellate attorney's fees.

In the present case, neither the City nor the Landowners requested specific findings of fact or conclusions of law; hence, the judgment of the trial court will be affirmed upon any legal theory consistent with the evidence. *Matter of Adoption of Johnson,* 612 N.E.2d 569, 573 (Ind.Ct.App.1993). When reviewing a general judgment, this Court does not reweigh the evidence or assess the credibility of the witnesses. Instead, we consider only the evidence most favorable to the judgment, along with all reasonable inferences to be drawn therefrom. *Olsson v. Moore,* 590 N.E.2d 160, 161–162 (Ind.Ct.App.1992). Moreover, when reviewing a general judgment, we presume that the trial court followed the law. *Johnson,* 612 N.E.2d at 573.

The City argues that the trial court erred in awarding the Landowners attorney's fees. Specifically, the City contends that it has not abandoned the condemnation proceedings as set forth in the Indiana Relocation Assistance Act, IND. CODE § 8–23–17 *et seq.* (1993 Ed.) (Indiana Relocation Act).

Generally, attorney's fees are not recoverable from the opposing party as costs, damages or otherwise, in the absence of an agreement between the parties, statutory authority, or rule to the contrary. *Johnson v. Sprague,* 614 N.E.2d 585, 589 (Ind.Ct.App. 1993), *trans. denied; Cox v. Ubik,* 424 N.E.2d 127, 129 (Ind.Ct.App.1981). Considering this rule, the Landowners direct us to a provision of the Indiana Relocation Act which states in pertinent part:

(a) The court having jurisdiction of a proceeding instituted by an agency to acquire real property by eminent domain shall award the owner of a right, or title to, or interest in, the real property the sum that will in the opinion of the court reimburse the owner for reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if:

(1) The final judgment is that the agency cannot acquire the real property by eminent domain; or

(2) The proceeding is *abandoned* by the agency.

IND. CODE § 8–23–17–27 (Emphasis added.).

Recently, this Court had the opportunity to interpret IND. CODE § 8–23–17–27 for the first time. *See Bd. of Com'rs of County of Knox v. Wyant,* 672 N.E.2d 77 (Ind.Ct. App.1996), *trans. pending.* Like its federal counterpart, Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654, the Indiana Relocation Act was designed to provide relocation assistance to property owners who have been displaced by governmental programs and forced to relocate their homes, businesses or farms. *Id.* at 80 (*citing, City of Mishawaka v. Fred W. Bubb, etc.,* 396 N.E.2d 943, 944 (Ind.Ct.App.1979)); *see also* 42 U.S.C. § 4621(b). The legislative intent was to create only a narrow exception to the general rule of non-recovery of litigation expenses in condemnation proceedings. *See United States v. 410.69 Acres of Land,* 608 F.2d 1073, 1076 (5th Cir.1979).

In determining whether a proceeding has been abandoned, this Court and courts with statutes substantially similar to the Indiana Relocation Act have recognized that dismissal of an action does not automatically constitute an abandonment. *See e.g., United States v. 410.69 Acres of Land,* 608 F.2d 1073, 1076 (5th Cir.1979) (federal act was not intended to require reimbursement of litigation expenses incurred by landowner in a condemnation proceeding voluntarily dismissed by the government when the landowner subsequently sold the land to the government for the asking price; fees landowner wished to charge the government should have been reflected in the sale price); *Unit-*

*ed States v. 4.18 Acres of Land,* 542 F.2d 786, 789 (9th Cir.1976) (where condemnation action brought by the government was dismissed because of procedural error and such dismissal was at the landowner's request and the government instituted a new action within one year seeking to take the same property, no abandonment had occurred; hence, the landowner was not entitled to attorney's fees and expenses under the federal act); *County of Los Angeles v. Hale,* 165 Cal.App.2d 22, 26–28, 331 P.2d 166, 169–170 (1958) (where county after commencing eminent domain proceeding changed plans to acquire additional land and thereupon dismissed proceeding to include the original and additional land, dismissal did not constitute an abandonment within the meaning of the California act); *Wyant,* 672 N.E.2d at 81 (landowners not entitled to attorney's fees pursuant to the Indiana Relocation Act when dismissal was filed over county's objection and county had already taken steps to correct the prior action's procedural flaws); and *Sorensen v. Lower Niobrara Nat. Res. Dist.,* 215 Neb. 681, 685–686, 340 N.W.2d 164, 167 (1983) (dismissal for failure to comply with statutory requirements under the Nebraska act did not constitute abandonment).

However, it is also important to note that under the language of the Indiana Relocation Act it is not the condemnation project which must be abandoned, but rather the action in which the costs and fees have been incurred. IND. CODE § 8–23–17–27(a)(2); *City of Whittier v. Aramian,* 264 Cal.App.2d 683, 686, 70 Cal.Rptr. 805, 807 (1968) (comparing a similar statute under California law). Numerous courts with similar statutes have, therefore, concluded that even an amended complaint can be considered tantamount to an abandonment of the proceedings.

In *Department of Transportation v. Northern Trust Co.,* 59 Ill.App.3d 1053, 1054, 17 Ill.Dec. 287, 376 N.E.2d 286 (1978), the department filed a complaint seeking to condemn 312.5 square feet of landowner's property. After negotiations, the public improvement was redesigned and the complaint was amended to take only 50 square feet of property which would not substantially interfere with the landowner's use of the residue. The

court held that the department was responsible for the landowner's attorney's fees and costs under the Illinois reimbursement statute because the taking of less than 1/6 of the area originally sought resulted in little or no damages to the remainder and was tantamount to filing a new action and abandoning the old. *Id.* at 287–288. *Accord, Department of Public Works & Bldgs. v. Lanter,* 15 Ill.2d 33, 38–39, 153 N.E.2d 552, 555 (1958) (amended condemnation complaint which omitted original access rights, changed entry of proposed highway and sought an additional 5 acres amounted to a substitution of property and tantamount to a new petition entitling the landowner to fees and costs under the Illinois reimbursement statute); *Montgomery County v. McQuary,* 26 Ohio Misc. 239, 241, 265 N.E.2d 812, 814 (Ohio Com.Pl.1971) (county's action in procuring a new and different course through the defendant's land tantamount to abandonment of the original proceeding).

Likewise, in the present case, in the original proceedings the City sought condemnation of 5.274 acres of Great Lakes/M.E.C.'s property and .666 acres of AXG's property for the purposes of relocating railroad tracks, placing a bridge on the property, and providing an access road to the bridge. The original complaint sought nine separate pieces of Great Lakes/M.E.C.'s land and three pieces of AXG's land in various shapes and location which crisscrossed the Landowners' property.

By contrast, in the second proceeding, the City no longer wanted any of the Great Lakes/M.E.C.'s property initially sought for relocation of the railroad tracks or for construction of an access road. The only property included in the City's new plan is an easement of a rectangular .458 acre piece of property for the purpose of building a portion of the bridge overpass and a temporary construction easement which will revert to the Landowners once construction is completed. The City now requests title to less than 3/10ths of one percent of land requested in the original proceeding and none of AXG's property. Additionally, the legal services performed for the Landowners in the second proceeding is substantially different from the

original proceeding. The City seeks substantially less of Great Lakes/M.E.C.'s property. Further, AXG is not a party to the second action, and M.E.C. has withdrawn its objections and has consented to the subsequent taking of its property interest. Therefore, we conclude that the City has clearly abandoned the proceeding as to AXG. *See Tennessee Gas Pipeline v. 104 Acres of Land,* 828 F.Supp. 123, 127 (D.R.I.1993), *modified on other grounds,* 32 F.3d 632 (1st Cir.1994) (eminent domain proceedings to obtain easement for a natural gas pipeline were abandoned by the U.S. when the pipeline was rerouted around landowner property, and, thus, landowners were entitled to attorney's fees and costs). As for the remainder of the Landowners, Great Lakes and M.E.C., the City's action of procuring a new and different course through the Landowners' property is tantamount to an abandonment of the original proceeding.

 Indiana Trial Rule 41(A)(2) provides additional authority for an award of fees. T.R. 41(A)(2) states in pertinent part: "Except as provided in subsection (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper...." In *Highland Realty v. Airport Authority,* 563 N.E.2d 1271 (Ind.1990), our supreme court concluded that the "terms and conditions" for dismissal under T.R. 41(A)(2) may include the payment of attorney's fees to assure that a dismissal does not prejudice or unfairly inconvenience the defendant. *Id.* at 1273. As explained by the court:

> Requiring the plaintiff to reimburse the defendant for attorney's fees before voluntary dismissal in a case like this one, where litigation has been long and costly, is simply a means of protecting the defendant from the consequences of the plaintiff's choice to run up the legal services bill, then walk away and wait for a better day to refile its suit.

*Id.*

Here, the trial court granted the City's motion for voluntary dismissal expressly on the condition that it was retaining jurisdiction to entertain the Landowners' petitions

for fees and costs. Although the trial court's dismissal order erroneously refers to T.R. 41(D) & (E), Landowners repeatedly informed the trial court that it was their intent to seek fees under T.R. 41(A)(2), and the City recognized that its dismissal was subject to the condition that the Landowners had the right to petition for such fees. The trial court also acknowledged that the fee petitions filed by the Landowners would seek damages under T.R. 41(A)(2). There was no error in awarding Landowners fees and costs which would not be useful in the subsequent proceeding.

 Next, the City contends that the trial court's award of $650,000 in attorney's fees was excessive. An award of attorney's fees lies within the trial court's discretion. This Court will neither reweigh the evidence nor disturb the trial court's decision absent an abuse of discretion. *Posey v. Lafayette Bank and Trust Co.,* 583 N.E.2d 149, 152 (Ind.Ct.App.1991).

Indiana Rules of Professional Conduct 1.5 provides a useful guide in determining the reasonableness of an award of attorney's fees. Factors to be considered as guides in determining the reasonableness of a fee include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

Prof. Cond. Rule 1.5. The City's suggestion that evidence must be presented on each factor to support an award of attorney's fees, is erroneous. *See Posey*, 583 N.E.2d at 152 (there is no requirement that evidence must be presented on each factor).

Here, the trial court held a two-day evidentiary hearing on the Landowners' fee petitions. Landowners submitted detailed time sheets describing legal services rendered, the lawyer rendering the services, his or her hourly rate, and time spent for these services. The trial court also heard evidence regarding the novelty and complexity of the legal issues involved, customarily charged fees, the financial stakes involved, the time limitations imposed by the nature of the case, and the experience of the attorneys performing the services. The evidence presented is sufficient to support the trial court's award.

On cross-appeal Great Lakes argues that the trial court abused its discretion in allowing the City to dismiss its action before ruling on Great Lakes' summary judgment motion. The thrust of Great Lakes' argument is that if this Court determines that the trial court erred in awarding fees pursuant to IND. CODE § 8–23–17–27(a)(2) or T.R. 41(A)(2), then the case should be remanded with instructions to enter summary judgment in Great Lakes' favor and to proceed to hear evidence of "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees" pursuant to IND. CODE § 8–23–17–27(a)(1). Having sustained the trial court's award of fees and expenses, this Court need not address Great Lakes' argument. Additionally, it is noted that the entry of dismissal renders a ruling on the motion for summary judgment futile.

■ Also on cross-appeal M.E.C. and AXG argue that the trial court erred in failing to award certain expenses. Specifically, they complain that they were entitled to $21,-063.62 in appraisal fees and $150 in engineering fees and that M.E.C. should have been awarded $125,000 in rent paid to Great Lakes.

The trial court's award of $350,000 in fees and expenses to M.E.C. and AXG was general in nature. On cross-appeal M.E.C. and AXG have failed to show that the award did not, in fact, include some or all of the expenses which they now claim were omitted from the award. M.E.C. and AXG presented evidence at trial as to their expenses. Further, the trial court had evidence before it that certain legal services incurred by M.E.C. and AXG were unreasonable and excessive. M.E.C. and AXG merely request that this Court reweigh the evidence, which it will not do. *See Seibert v. Mock*, 510 N.E.2d 1373, 1375 (Ind.Ct.App.1987).

■ Finally, M.E.C. and AXG contend that they are entitled to appellate attorney's fees. As M.E.C. and AXG point out, a statutory provision entitling a party to "reasonable attorney fees" includes appellate fees. *Campins v. Capels*, 461 N.E.2d 712, 723 (Ind. Ct.App.1984); *Parrish v. Terre Haute Sav. Bank*, 438 N.E.2d 1, 3 (Ind.Ct.App.1982). This includes legal services incurred defending a fee award. *See id. (citing, Templeton v. Sam Klain & Son, Inc.*, 425 N.E.2d 89, 95 (Ind.1981)). Accordingly, this Court affirms the judgment and remands the case with instructions to the trial court to consider M.E.C. and AXG's petition for appellate fees.

Affirmed and remanded.

GARRARD and FRIEDLANDER, JJ., concur.