850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Maxine BOWMAN, individually and as the Executrix for the
estate of John C. Bowman, Sr., Plaintiff-Appellee,
v.
COLUMBIA GAS TRANSMISSION CORPORATION, Defendant-Appellant,
 No. 87-3166.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant, the Columbia Gas Transmission Corporation ("Columbia"), appeals the denial of its motion for judgment notwithstanding the verdict seeking to set aside the award of punitive damages awarded to plaintiff Maxine Bowman on her trespass claim. For the following reasons, we AFFIRM.
 
 I.
 
 2
 On March 26, 1964, the Ohio Fuel Gas Company, predecessor in interest of Columbia, applied to the Federal Power Commission ("FPC") for a Sec. 7 Certificate pursuant to the Natural Gas Act, 15 U.S.C. Sec. 717 et. seq., which would allow the company to acquire and construct what is known as the Lucas gas storage field in Ashland County, Ohio. At the time of the filing, Ohio Fuel Gas Company acknowledged that four parcels within the active area remained to be acquired before ownership could be completed. On August 3, 1964, the FPC issued its Findings and Order granting the requested certificate to Ohio Fuel Gas subject to certain conditions, including that any authorized construction, extension, or acquisition must be completed by Ohio Fuel Gas within twenty-four months from the issuance date of the order, or no later than August 3, 1966. Although the Commission was to be notified of completion and of final cost, and although Ohio Fuel Gas submitted periodic reports and a final detailed compilation of costs, Ohio Fuel Gas never acquired one of the remaining parcels, the Bowman tract.
 
 
 3
 The Bowman tract was a farm owned by John Bowman, now deceased, and his wife, Maxine Bowman, who had received their interest in the land from Cleveland Bowman. During 1964 and 1965, the Bowmans were contacted by representatives of Ohio Fuel Gas who sought to lease the Bowman tract for subterranean gas storage. However, no member of the Bowman family ever agreed to any sale, lease or use of their property by Ohio Fuel Gas. Indeed, throughout the mid-1960's, Ohio Fuel Gas unsuccessfully attempted to obtain a lease from the Bowmans, but was rebuffed by John Bowman, who intended to drill a well on the property. At no time during the period from 1964 until 1984 did Ohio Fuel Gas or its successor, Columbia Gas Transmission,[1] ever inform the Bowmans that natural gas was being stored under their farm.
 
 
 4
 John Bowman died in 1982, naming his wife as executrix of his estate and devising the Bowman farm to her. In 1983, Maxine Bowman conveyed the property to her son and his wife, John C. Bowman and Becky Jo Bowman, but continued to reside on the farm.
 
 
 5
 In 1984, John C. Bowman and Becky Jo Bowman signed a lease with Victor Petroleum for the drilling of a well on the Bowman tract.[2] Victor filed an application for a drilling permit and the Ohio Division of Oil and Gas issued a permit for the drilling of the proposed well. At this time, in its first acknowledgment after twenty years that it had been storing gas beneath the Bowman property without any permission and without paying any compensation, Columbia successfully sought a restraining order preventing the Bowman's and Victor Petroleum from drilling on the Bowman property. Subsequently, the lease with Victor Petroleum expired.
 
 
 6
 On February 4, 1984, Columbia filed a condemnation action pursuant to the provisions of Sec. 7(h) of the Natural Gas Act, 15 U.S.C. Sec. 717f(h), to obtain an underground natural gas storage easement in the Clinton formation underlying the Bowman tract. On May 1, 1985, Maxine Bowman filed a trespass action in state court, seeking actual and punitive damages for the twenty years that she owned the tract. The trespass action was subsequently removed to federal court and consolidated with the condemnation proceeding. On October 16, 1986, the district court denied Columbia's motion for partial summary judgment on the trespass claim, concluding that Ohio trespass law applied and that the fifth amendment doctrine of inverse condemnation did not. After trial, the jury awarded John C. Bowman and Becky Jo Bowman $10,021.75 in the condemnation action, and $8,300.00 in compensatory damages and $30,000 in punitive damages to Maxine Bowman on her trespass claim. Columbia moved for a judgment notwithstanding that portion of the verdict which awarded punitive damages, which was denied.
 
 II.
 
 7
 Initially, we note that, on appeal, Columbia argues that (1) Bowman is limited to a cause of action for inverse condemnation under the fifth amendment, and may not assert a claim for trespass under Ohio law; and (2) the act alleged did not constitute a trespass under Ohio law. We do not address these issues, for we find that the only issue preserved for appeal is whether the evidence supported the award of punitive damages, as this was the only issue raised in Columbia's motion for a judgment notwithstanding the verdict.
 
 
 8
 First, as to Columbia's appeal of the denial of its motion for partial summary judgment, such rulings are generally not reviewable on an appeal from the final judgment entered after trial. E.g., Glaros v. H.H. Robertson Co., 797 F.2d 1564, 1573 (Fed.Cir.1986), cert. denied, 107 S.Ct. 1262 (1987); Jones v. United States, 466 F.2d 131, 136 n. 3 (10th Cir.1972), cert. denied, 409 U.S. 1125 (1973). Second, as to Columbia's appeal from that portion of the final judgment not covered by its motion for a judgment notwithstanding the verdict, the only remaining issue is whether Columbia's actions represented a trespass under Ohio law. We note, however, that this issue is raised for the first time on appeal; Columbia did not elect to challenge this finding in its motion for a judgment notwithstanding the verdict. Therefore, this issue is waived.
 
 III.
 
 9
 Under Ohio law, before punitive damages may be awarded, actual damages must be found and assessed. Richard v. Hunter, 151 Ohio St. 185, 187-89, 85 N.E.2d 109, 110 (1949). Moreover, "actual malice is required for a question of punitive damages to be submitted to a jury." Detling v. Chockley, 70 Ohio St.2d 134, 137, 436 N.E.2d 208, 210 (1982). "Actual malice may take the form of the defendant's express ill will, hatred or spirit of revenge, or the form of reckless or wanton behavior which can be inferred from surrounding circumstances." Detling, 70 Ohio St.2d at 137.
 
 
 10
 The requirement that there be actual damages is easily satisfied in this case. First, a proven trespass gives rise to at least nominal damages, Pearl v. Pic Walsh Freight Co., 112 Ohio App. 11, 12, 168 N.E.2d 571, 572 (1960); and, in Ohio, nominal damages will support an award of punitive damages. Quillet v. Johnson, 34 Ohio Op. 308, 71 N.E.2d 488, 489-90 (1947).
 
 
 11
 Similarly, the requirement that actual malice be demonstrated is also easily satisfied. Indeed, it is difficult to imagine a case in which an award of punitive damages would be more appropriate. Despite being continually informed that the Bowmans did not wish to lease their tract, and despite having ample notice that the Bowmans intended to use their land in a manner wholly incompatible with the subterranean storage of gas, Columbia intentionally concealed the fact that they were using the property for twenty years without any compensation, just or otherwise. Presumably, this willful unauthorized expropriation would have been continued indefinitely had the Bowmans not signed a lease to retrieve gas from their own property, thereby forcing Columbia's hand. Columbia's actions went beyond mere negligence; their willful and outrageous character amply supported an award of punitive damages.
 
 V.
 
 12
 For the foregoing reasons, the judgment is AFFIRMED.
 
 
 13
 Judge Martin concurs in the judgement only.
 
 
 14
 RYAN, Circuit Judge (concurring).
 
 
 15
 I concur in the result reached by my brothers, but not in the reasons expressed in Part II of the opinion for failing to reach the merits of two of Columbia's arguments.
 
 
 16
 First, Columbia's motion for partial summary judgment was based on the theory that Maxine Bowman's sole recourse was an action for inverse condemnation, and that she was, therefore, precluded from pursuing her state law trespass claim. The value to Columbia of such limitation is that punitive damages, permissible in a trespass claim under Ohio law, are not available in an inverse condemnation action under federal law. The district court, as a matter of law, correctly rejected this theory.
 
 
 17
 However, my concern is with the majority's statement that, "as to Columbia's appeal of the denial of its motion for partial summary judgment, such rulings are generally not reviewable on appeal from the final judgment entered after trial." Although the actual denial of the motion is not reviewable at the time of denial, the legal argument rejected by the district court can most certainly be considered by this court on review of the propriety of the final judgment below.
 
 
 18
 A denial of summary judgment indicates that the moving party has failed to establish that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law; a trial therefore is necessary. As a result, the denial of a Rule 56 motion is an interlocutory order from which no appeal is available until the entry of judgment following the trial on the merits. At that time, the party who unsuccessfully sought summary judgment may argue that the trial court's denial of the Rule 56 motion was erroneous.
 
 
 19
 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, Sec. 2715 (1983) (footnotes omitted). Columbia's notice of appeal does not assert that Columbia appeals merely from the denial of that motion. It also states that Columbia appeals from the final judgment with respect to punitive damages. The theory raised by Columbia in the motion for partial summary judgment, if adopted, would preclude the award of punitive damages in this case.
 
 
 20
 Secondly, I do not agree with the court's finding that Columbia waived its argument that its actions did not constitute trespass under Ohio law. In its motion for judgment notwithstanding the verdict, Columbia challenged the award of punitive damages without specifying the precise theories for its position. However, in its memorandum in support of itsmotion for judgment notwithstanding the verdict, Columbia specifically raised the question whether its actions constituted trespass under Ohio law. Defendant's Memorandum in Support of Motion for Judgment Notwithstanding the Verdict, 15-19 (December 3, 1986). Because the memorandum specifically brought this issue to the attention of the lower court, I cannot find that the failure of the motion papers to specifically identify this theory constitutes a waiver.
 
 
 21
 Lastly, having said all that, and after carefully examining the arguments regarding the merits of Columbia's two theories, I conclude that the appellee has the better of the arguments. Therefore, I concur in the result reached by the majority.
 
 
 
 [1]
 Ohio Fuel Gas was merged into Columbia Gas Transmission in 1971. Subsequently, the Sec. 7c Certificate covering the Lucas extension was transferred to Columbia Gas Transmission
 
 
 [2]
 A previous well had been drilled in 1976 which reached the Clinton formation; however, a malfunction prohibited use of that well. Columbia made no inquiries or objections concerning this well