**COLUMBIA GAS TRANSMISSION CORPORATION, Plaintiff,**

v.

**AN EXCLUSIVE NATURAL GAS STORAGE EASEMENT IN THE CLINTON SUBTERRANEAN GEOLOGICAL FORMATION BENEATH 80 ACRES, WORTHINGTON TWP., RICHLAND COUNTY, OHIO: Earl F. Arnholt, et al., Defendants.**

**No. C88–2935A.**

United States District Court, N.D. Ohio, E.D.

Sept. 25, 1990.

David Noble, Cleveland, Ohio, Johnny Knisely, II, Charleston, W.Va., for plaintiff.

Bryan Halligan, Troth & Van Tilburg, Ashland, Ohio, George J. Murray, Office of Pros. Atty., Mansfield, Ohio, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION.

This action is brought pursuant to § 7(h) of the Natural Gas Act (15 U.S.C. § 717f(h)) whereby Columbia Gas Transmission Corporation seeks to condemn an underground natural gas storage easement in the Clinton Sandstone beneath a tract of land owned by Mr. and Mrs. Earl F. Arnholt. The tract of land is within the "map area" of the natural gas storage field known as the Weaver Storage Field. The power of Columbia Gas Transmission Corporation to condemn the tract in question arises from the fact that the tract is within the Weaver Storage Field and a Certificate of Public Convenience and Necessity to construct, operate and maintain facilities for the purpose of operating the Weaver Storage Field has been issued by the Federal Power Commission, the predecessor to the Federal Energy Regulatory Commission. The Arnholt tract has been subject to Columbia's power to condemn for some time,[1] but this action was not commenced until 1988. As a consequence the Arnholts contend that Columbia has been trespassing upon Arnholt's subsurface interests in the tract from the time it began storing natural gas, an event which pre-dates the filing of this action. The Arnholts have filed a counterclaim for damages in trespass and seek compensatory damages and punitive damages for the trespass. The Arnholts anchor their claim in this Court's ruling in a prior natural gas storage ease-

---

1. Columbia's extension of eminent domain powers as to the Arnholt property is not challenged. See *Columbia Gas Transmission Corp. v. An* *Exclusive Gas Storage Easement,* 776 F.2d 125, 129 (6th Cir.1985), 578 F.Supp. 930, 933 (N.D. Ohio 1983).

ment case the *Bowman* case, wherein the Court allowed, over Columbia's objection a similar trespass action to be prosecuted and allowed the jury to assess punitive damages. In an unpublished opinion, the judgment in the *Bowman* case as it related to trespass and punitive damages, was affirmed.[2]

█ In its well reasoned brief, Columbia re-asserts its belief that the nature of this action, a condemnation action pursuant to federal law, preempts any consideration of the substantive law of Ohio. Columbia contends that the law of inverse condemnation applies and negates Arnholt's action for trespass and punitive damages. Upon further reflection and reconsideration of the issue the Court concludes that Columbia is correct. The Court will grant summary judgment to Columbia with respect to the counterclaim based on common law trespass. The Court's reasoning follows.

Columbia accurately characterizes the issue with respect to the trespass action directed to the period that precedes the filing of this condemnation action, *i.e.,* do state law remedies apply to precompensation takings within the federally certificated map area of an underground gas storage field.

For the purposes of its motion, Columbia concedes that its stored natural gas has migrated to that portion of the Clinton formation beneath the Arnholt property and agrees that such storage is the factual predicate for Arnholt's counterclaims for trespass and punitive damages.

Columbia acknowledges that the Ohio Constitution severely restricts the sovereign's right to exercise eminent domain rights in Ohio. Just compensation must be paid before the property in Ohio can be taken for public use and as a consequence,

other remedies besides just compensation are available when one's property is taken for public use in Ohio, including civil trespass and punitive damages.

In *Bowman, supra,* this Court reasoned that the provisions of § 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h) which provides:

When any holder of a certificate of public convenience and necessity cannot acquire by contract ... the necessary right of way ... for the transportation of natural gas ... it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located ... *The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated* ... (emphasis added)

entitled the property owners to prosecute an action for common law trespass together with punitive damages because the State of Ohio recognized such a cause of action.

Nonetheless, Columbia asserts that state law is preempted as to the exercise of eminent domain rights as they pertain to the transportation, sale and storage of natural gas by the combination of the Supremacy Clause of the United States Constitution[3] and the provisions of the Natural Gas Act.[4]

Upon further reflection, the Court finds 15 U.S.C. § 717(b) to be pivotal in the analysis as it provides:

"The provisions of this chapter shall apply to the transportation of natural gas

---

**2.** The Sixth Circuit, in affirming the award of damages for trespass in *Bowman,* held that Columbia had failed to preserve for appellate purposes its claim that the property owner was limited to a cause of action for inverse condemnation and could not pursue the trespass action. Thus, the only precedent on the inverse condemnation, vis-a-vis the trespass claim, is this Court's opinion in *Bowman.*

**3.** Article VI, cl. 2 states:

"This Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

**4.** 15 U.S.C. §§ 717–717w.

in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale, of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."

The Weaver Storage Field in which the Arnholt property lies is on the federal side of the line drawn by the provisions of 15 U.S.C. § 717(b). The storage of natural gas transported in interstate commerce comes within the purview of the Natural Gas Act. *See Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 295 n. 1, 108 S.Ct. 1145, 1148 n. 1, 99 L.Ed.2d 316 (1988).

The Supreme Court has protected the federal jurisdiction under the Natural Gas Act from direct and indirect state regulation. *Northern Natural Gas Co. v. State Corporation Commission of Kansas,* 372 U.S. 84, 83 S.Ct. 646, 9 L.Ed.2d 601 (1963); *Mississippi Power & Light Co. v. Mississippi ex rel Moore,* 487 U.S. 354, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988); *Schneidewind, supra; Nantahala Power and Light Co. v. Thornburg,* 476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986); *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981).

■ The property owner's and the Court's past reliance on the provisions of § 7(h) of the Natural Gas Act directing the District Courts of the United States to follow the practice and procedures of the state where the property is located in connection with eminent domain cases arising under the Natural Gas Act is and was misplaced. The Court reads § 7(h) in para materia with § 7(b) of the Natural Gas Act and concludes that the landowner's remedies with respect to a taking of his property by the United States Government or by a private corporation authorized to exercise the power of eminent domain are controlled and limited by federal substantive law. The statutory directive in § 7(h) to conform "practice and procedure" in eminent domain actions to state practice and procedure neither negates nor modifies application of federal substantive law with respect to eminent domain issues.

■ The Court concludes that the State of Ohio has no power to regulate, directly or indirectly, a natural gas storage field certificated by the Federal Energy Regulation Commission (FERC). The Court finds that such an invocation of preemption applies to the exercise of eminent domain powers whether exercised by the U.S. Government or by a private company granted the power of eminent domain such as has been accorded Columbia in connection with its Weaver Storage Field for the storage of natural gas.

The conclusion that Ohio law regarding the taking of property for public use is not applicable because it is preempted by federal law is dispositive of Arnholt's counterclaim for trespass and punitive damages. It will not be allowed to proceed. Federal eminent domain law, anchored in the Fifth Amendment provision that "private property (shall not) be taken for public use, without just compensation" does not prohibit the taking but rather places a condition of the taking, *i.e.,* just compensation. *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960), teaches that government action that works a taking of property rights necessarily implicates the constitutional obligation to pay just compensation. Consequently, the courts have recognized the right of the property owner to bring an inverse condemnation action where there has been a taking. *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980).

The Court's determination that it erred in its earlier ruling in the *Bowman* case has nonetheless prompted concern about the practical consequences of its decision that the federal substantive law of inverse condemnation applies with respect to the taking of an easement for the underground storage of natural gas moving in interstate

commerce.[5] The *Bowman* case presented a fact situation wherein the property owner's predecessor in title had refused to convey an easement for gas storage some twenty years prior to the filing of the action in condemnation. The action in trespass was brought by the predecessor in title in a situation where the family farm had passed to a succeeding generation. In connection with the underground storage of natural gas and in conjunction with Columbia's condemnation action, it is possible that title will pass from the time of storage until the time an action to condemn is filed, because the fact of storage may not be evident. The company engaged in the storage may have no incentive to acquire the easement unless the property owner threatens to drill for gas with the resulting threat to the storing company's interest. *Cf., Columbia Gas Transmission Corp. v. 19.16 Acres,* 705 F.Supp. 1242 (N.D.Ohio 1988).

■ Initially, the Court was concerned that application of the law of inverse condemnation in connection with the underground storage of natural gas would require a decision that the date of the take was the date of initial gas storage which would limit the right to recover to whoever was the property owner at that time. Upon further reflection and with the assistance of counsel, the Court concludes that its initial concern was misplaced. The Just Compensation Clause of the Fifth Amendment is a remedial measure. *See, First English Evangelical Lutheran Church v. Los Angeles County,* 482 U.S. 304, 317–318, 107 S.Ct. 2378, 2385–2386, 96 L.Ed.2d 250 (1987). The Just Compensation Clause does not abridge the absolute right of the United States Government to take private property for public use. Rather it creates a constitutional cause of action for those who are forced "alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

■ Inverse condemnation is not as the term might suggest, a means of property acquisition. Rather it is a landowner's remedy for uncompensated takings of property for public use. The uncompensated taking may be temporary as opposed to a permanent taking. However, the filing of the action to condemn tends to make the taking permanent and the measure of damages is computed by determining the extent of the loss of the property rights on a permanent basis. The issue of damages will likely be different in an inverse condemnation action. In addition to having the burden of proof as to the fact of an inverse condemnation, the property owner at the time of the inverse condemnation will have the burden of proof as to the damages. It is entirely possible that the property owner will contend that the process of storing the gas resulted in the capture of native gas that might have otherwise been economically recovered by the property owner. At a minimum the aggrieved property owner will have available the local history with respect to the going rate for contemporaneous underground storage easements.

■ As the inverse condemnation of the storage rights prior to the filing of the condemnation action is possibly temporary, it makes little sense to argue or hold that the take for the purpose of determining who has the right to the permanent loss of the storage rights occurred prior to the filing of the complaint. In normal condemnation proceedings the property is not "taken" until the award is paid. See Rule 71A of the Federal Rules of Civil Procedure. However, where there has been an interference with the owner's use of the property prior to payment of the award, the courts may fix the date of the taking as of the date of the filing of the complaint. This Court has already so ruled in prior under-

---

**5.** The court requested the able counsel participating in this case for both Columbia and the property owner to respond to a series of questions respecting date of take, damages with respect to an action for inverse condemnation, identity of the real party in interest where the property changes hands between the first apparent use of the land for storage purposes and the filing of the condemnation action.

ground storage easement cases. *Cf., Kirby Forest Industries v. United States,* 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984).

Given the Court's ruling that an action for trespass with accompanying punitive damages for prior unauthorized use of the storage field is pre-empted by the application of the principles of inverse condemnation and the accompanying determination that the date for the take of the permanent storage easement is fixed by the filing of the complaint in condemnation, the identification of the allegedly injured property owners by the inverse condemnation action turns on a determination of who owned the property at the time of the inverse condemnation.[6]

Assuming then, as Columbia concedes for the purpose of this motion for partial summary judgment, a use of the property for gas storage purposes prior to the filing of the condemnation action by Columbia, Columbia's motion for summary judgment as to the counterclaim seeking compensatory and punitive damages for common law trespass is granted. However, the Arnholts, having relied on the Court's opinion in *Bowman, supra,* are granted leave until October 15, 1990 to file an amended counterclaim seeking compensatory damages for inverse condemnation.

IT IS SO ORDERED.

---

**6.** The court anticipates that issues relating to the statute of limitations may arise in these cases, but defers any ruling on that subject until the issue is presented.