TENNESSEE GAS PIPELINE
COMPANY, Plaintiff,

v.

NEW ENGLAND POWER, C.T.L.,
INC., et al., Defendants.

No. 98–CV–10671–MEL.

United States District Court,
D. Massachusetts.

June 30, 1998.

Paul G. Lannon, Jr., Harold W. Potter, Jr., Dianne R. Phillips, Paul E. Troy, Sherburne, Powers & Needham, Boston, MA, for Tennessee Gas Pipeline Company.

Scott A. Frank, c/o Combined Properties, Inc., Malden, MA, for Irving Court Associates Limited Partnership, Irving Court Associates Limited Partnership and Approximately 0.008 Acres of Permanent Easement and 0.04 Acres of Temporary Work Space Over Land in the City of Malden, Main Street/60 Associates Limited Partnership, Main Street /60 Associates Limited Partnership and Approximately 0.02 Acres of Permanent Easement and 0.03 Acres of Temporary Work Space Over Land in the City of Malden.

Donald F. Borenstein, Law Office of Mark B. Johnson, Andover, MA, for Capitol Truck Leasing, Inc., Capitol Truct Leasing, Inc. and approximately 1.98 acres of temporary work space over land in the City of Everett.

Vincent F. O'Rourke, Jr., Bowditch & Dewey, Worcester, MA, for Electric Massachusetts Electric Company.

## MEMORANDUM AND ORDER

LASKER, District Judge.

Tennessee Gas Pipeline moves for: (1) an order allowing it to enter and possess immediately the proposed temporary easement and rights-of-way described in Count XII of the complaint in this action, and (2) the grant of summary judgment as to its right under the Natural Gas Act, see 15 U.S.C. § 717f(h), to take the same property by eminent domain. The proposed easement and rights-of-way cross property which is owned in fee by General Electric, and on which defendant truck company C.T.L., Inc.[1] stores approxi-

---

1. Counsel for C.T.L., Inc. and the apparently intimately related Capitol Truck Leasing, Inc., has represented that the real party in interest in this case is C.T.L., and not Capitol. The distinctions between the corporations and their activi-

ties are not completely clear at this time, but considering that both businesses have been served in this action, and are represented by one attorney who is also an officer of both corporations, to the extent that Capitol does indeed hold

mately 90 tractor trailers.[2] Tennessee seeks the approximately 1.98 acre property as a temporary work space for the purpose of storing pipeline and concrete casing prior to its use in Tennessee's "DOMAC" project—a project approved and certified by the Federal Energy Regulatory Commission (FERC) on June 25, 1997.[3] Tennessee has reached agreement with G.E. C.T.L., however, opposes Tennessee's entry on the property, citing its difficulties in moving the 90—let alone the full 200—trailers parked on the property at this time. Tennessee seeks a permanent injunction enjoining C.T.L. from interfering in any way with Tennessee's use and occupancy of the easement or rights-of-way.

■ As an initial matter, C.T.L. does not actually dispute Tennessee's right under the Natural Gas Act to take the property by eminent domain. Because I find that Tennessee meets the statutory requirements for the proposed taking by: (1) holding a valid FERC Certificate for the DOMAC project, (2) seeking land that is necessary to the project, and (3) having failed to settle with a relevant property holder despite good faith negotiations, the Motion for Partial Summary Judgment is granted as to Count XII. *See* 15 U.S.C. § 717f(h).

■ As indicated above, C.T.L. opposes Tennessee's right to immediate entry and possession, arguing that: (1) the Natural Gas Act's delegation of the federal power of eminent domain to pipeline companies such as Tennessee is a limited delegation that does not extend to provide for entry and possession *prior to* the conclusion of condemnation proceedings, including the determination of compensation; (2) Tennessee has failed to comply with the Uniform Relocation Assistance and Real Property Acquisition Policies Act—specifically, 42 U.S.C. §§ 4622 and 4651—by not paying C.T.L.'s moving ex-

penses *prior to* gaining access to the property; and (3) Tennessee has not negotiated in good faith with C.T.L. C.T.L.'s first two arguments are legally unsound, and the third is factually unsupported.

C.T.L. is incorrect that this Court does not have authority to grant a right of immediate entry prior to the completion of condemnation proceedings. As I have previously determined in related litigation, *see* note 3, the district court does have the equitable power to grant immediate entry and possession where such relief is essential to the pipeline construction schedule. *See also Kern River Gas Transm. Co. v. Clark County, Nev.,* 757 F.Supp. 1110, 1116 (D.Nev.1990); *Northern Border Pipeline Co. v. 127.79 Acres of Land, More or Less in Williams Cty., N.D.,* 520 F.Supp. 170, 172–73 (D.N.D.1981). Here, Tennessee has adequately established that waiting any longer to occupy the G.E. site could well preclude it from meeting the FERC-imposed December deadline for completion of construction. (Hall Affidavit.)

■ C.T.L.'s arguments as to the application and significance of the Relocation Assistance and Property Acquisition Act (the Act) are also without merit. Section 4651 does not relate to takings by eminent domain. Rather, the statute explicitly encourages federal agencies to negotiate for the purchase of real property in an effort to avoid eminent domain actions, and sets guidelines—to be followed "to the greatest extent possible"—for agencies negotiating such purchases. *See* 42 U.S.C. § 4651. Moreover, § 4602(a) of the same chapter expressly states that "the provisions of section 4651 of this title create *no rights or liabilities* and shall not affect the validity of any property acquisitions by purchase or condemnation." (emphasis added.) Indeed, the courts have held consistently that § 4651

---

an interest in the property at issue, this Order is directed to the two corporations jointly as "C.T.L."

**2.** The property Tennessee seeks also abuts other G.E. property on which C.T.L. stores another approximately 110 trailers. The second site is relevant to the extent that Tennessee's proposed taking would render it inaccessible.

**3.** The DOMAC project and the relevant sections of the Natural Gas Act have previously been discussed in depth in related litigation. *See* Memorandum and Order of April 1, 1998, Civil Action Nos. 97–12724 and 97–12577, *Tennessee Gas Pipeline Company v. Massachusetts Bay Transportation Authority,* 2 F.Supp.2d 106 (D.Mass.1998) and Memorandum and Order of June 17, 1998, Civil Action No. 98–10204.

merely sets forth policy guidelines, creating no rights whatsoever in condemnees. *See United States v. 410.69 Acres of Land, More or Less in Escambia Cty., Fla.,* 608 F.2d 1073, 1074 n. 1 (5th Cir.1979) (no rights are created, and the statute "is no more than a statement by Congress of what it perceives to be the preferred method of dealing with landowners when the government wants to acquire their land"); *Paramount Farms, Inc. v. Morton,* 527 F.2d 1301, 1306 (7th Cir.1975) (the Act's "language, legislative history, judicial decisions and policy considerations all compel the conclusion that Congress never intended to permit judicial review of agency action taken or omitted pursuant to guidelines in section 4651").

■ Nor does 42 U.S.C. § 4622 require Tennessee to postpone immediate occupancy of the target property. C.T.L. argues that it is a "displaced person" under 42 U.S.C. § 4601, and therefore entitled to the payment of moving expenses under § 4622 *prior to* Tennessee's possession of the property. C.T.L. is incorrect.

As an initial point, it is highly doubtful that C.T.L. is a "displaced person" within the meaning of the Act. Section 4601(6)(B)(i) excludes from the category of displaced persons anyone "who has been determined, according to criteria established by the head of [the Department of Transportation, *see* § 4601(12) ], to be ... in unlawful occupancy" of the property at issue. Tennessee alleges that C.T.L. is on the property pursuant to a permit that was effectively revoked by G.E., and has submitted a letter from G.E. to counsel for C.T.L. declaring the permit "revoked and terminated." However, because the letter may be considered hearsay, and there has apparently been no determination of the question according to criteria established by the head of D.O.T., decision on the issue is deferred.

Nevertheless, even if C.T.L. were a "displaced person" under the Act, payment of relocation expenses is not a prerequisite to condemnation or the right to immediate entry. Section 4622 does not itself require prepayment, and the relevant regulations provide that: (1) all claims for relocation payments shall be filed with the relevant "federal agency" (here, Tennessee) within 18 months *after* the date of displacement, *see* 49 C.F.R. § 24.207(d), and (2) that the applicant shall support any claim for relocation payment with documentation to support expenses already incurred, *see* 49 C.F.R. § 24.207(a). To date, C.T.L. has neither applied for, nor incurred, moving expenses.

■ It is true that the regulations do provide that a "displaced person" may obtain advance payment of relocation expenses if it is demonstrated that the advance is necessary to avoid or reduce a hardship. *See* 49 C.F.R. § 24.207(c). The present record, however, is insufficient to determine whether C.T.L. qualifies under the regulations. Although the affidavit of Donald Borenstein, the corporation's Treasurer, asserts that "[t]he cost of [moving the trailers *now,* as opposed to over an extended period of time] would be prohibitive and may threaten the financial stability of C.T.L.," no information has been furnished as to either the sums of money required to move between 90 and 200 trailers, or C.T.L's ability to assume that cost until, if ever, it is determined that C.T.L. is entitled to payment by Tennessee for moving expenses. The insufficiency of the record is particularly evident in light of Tennessee's repeated offers to pay C.T.L. several thousand dollars to move the trailers expeditiously.

■ C.T.L.'s final argument in opposition to the motion for immediate entry—that Tennessee failed to negotiate with C.T.L. in good faith—is without merit. Tennessee has amply supported the claim that it negotiated in good faith, if with nothing else but the abovementioned offers. (*See* Richardson Affidavit; Winter Affidavit.) Moreover, the present claim is inconsistent with C.T.L.'s failure to oppose Tennessee's right to take the property by eminent domain—a right dependent on a finding of good faith negotiations.

Lastly, there does exist a serious question as to whether C.T.L. has any rights as a holdover tenant or otherwise in the property. If it is ultimately determined that the compa-

ny has had no such rights, it may not be entitled to any compensation.

\*     ·\*     \*

For the foregoing reasons, both the Motion for Immediate Entry and Possession, and·the Motion for Partial Summary Judgment, are granted as to Count XII.

■■ Furthermore, because Tennessee has established that: (1) conflicts may well arise between the pipeline delivery and storage on G.E. property, and C.T.L.'s activities on, and/or impending departure from, the premises; (2) interference with Tennessee's use of the G.E. property at this crucial stage in the construction of the DOMAC project would irreparably harm Tennessee and the public by likely preventing completion of the project by the FERC-imposed deadline of December, 1998; and (3) granting the injunctive relief sought will impose no greater a burden on C.T.L. than that resulting from the eventual entry of a judgment of taking, Tennessee's Motion for Injunctive Relief is granted to the extent that C.T.L. is enjoined from interfering with Tennessee's use and occupancy of the temporary easement and rights-of-way described in Count XII.

Submit proposed decree on notice.