**Jack HUMPHRIES, Plaintiff,**

v.

**WILLIAMS NATURAL GAS COMPANY, a Corporation, Defendant.**

No. 96–4196–SAC.

United States District Court, D. Kansas.

March 30, 1999.

Charles S. Fisher, Jr., Fisher, Cavanaugh & Smith, P.A., Topeka, KS, for Plaintiff.

Jay V. Allen, Tulsa, OK, Teresa J. James, Wallace, Saunders, Austin, Wichita, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On October 15, 1996, Jack Humphries filed a petition in Shawnee County, Kansas, District Court seeking damages from Williams Natural Gas Company (WNG). Humphries' petition alleges that WNG "acting through numerous employees, came upon the real property of Plaintiff with back hoes, bulldozers and other heavy equipment and unlawfully took to its own use" a tract of land owned by Humphries without paying any compensation. Humphries' petition asks for damages in excess of $100,000 in recompense for WNG's alleged acts of trespass, unlawful taking and damage to remaining property. On November 15, 1996, WNG removed Humphries' petition to federal district court.

This case was randomly assigned this court.

On March 6, 1997, WNG filed a condemnation proceeding under the Natural Gas Act, 15 U.S.C. § 717f(h) against Humphries. That case, Case No. 97–4050–RDR, was randomly assigned to Judge Rogers.[1]

This case comes before the court upon WNG's "Motion for Summary Judgment" (Dk.15). In its six page memorandum in support of its motion for summary judgment, WNG essentially argues that Humphries' claims for trespass and unlawful taking are preempted by federal law. WNG contends that its condemnation proceeding in Case No. 97–4050–SAC is the only proper avenue for determining the compensation it owes to Humphries. WNG states that "[r]ather than litigate the question of whether WNG's existing easement gives WNG the right to enter upon plaintiff's property to conduct such operations, WNG chose to file its Complaint to condemn Plaintiff's property."

In Humphries' nine page response he argues that WNG essentially missed its opportunity to take advantage of the provisions of § 717f(h) when it came upon his land in July of 1996 without notice, discussion or permission. Humphries admits that WNG has since offered to compensate him for the use of his land but contends that no final settlement was reached. In any event, over Humphries' objection, WNG pressed forward with its construction of its pipeline. Humphries notes that WNG did not initiate a separate condemnation action until five months after he had filed this action. Humphries contends that

although WNG "may be entitled to exercise the right of eminent domain to procure property for use with its pipeline business, it chose not to do so in this case." Humphries argues that "[i]t is clear that the Defendant, knowing the provisions of the Natural Gas Act, chose not to follow them in this case" and that "[t]he Defendant should not be allowed to come in after the fact and attempt to pre-empt the action filed by the plaintiff."

WNG responds, arguing that it has complied with the provisions of the Natural Gas Act in this case and that it makes no difference that Humphries won the race to the courthouse. WNG also contends that its failure to file a condemnation action before entering Humphries' property is not a problem, as "it is not uncommon for an entry and 'taking' to occur prior to filing a condemnation action."

### Uncontroverted Facts

The essential facts of this case are undisputed. WNG is a natural gas company under the Natural Gas Act which, pursuant to Certificates of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission or its predecessors, is engaged in the transportation of natural gas in interstate commerce in Texas, Oklahoma, Kansas, Missouri, Nebraska and Colorado. Under § 717f(h) of the Natural Gas Act, WNG has the power of eminent domain that is necessary to condemn property, including the property owned by Humphries.

As indicated above, Humphries claims that WNG, while building a natural gas pipeline, took for its own use a tract of land[2] he owns without paying him com-

---

1. The case originally assigned to Judge Rogers is stayed pending this court's ruling on WNG's motion for summary judgment.

   By minute order entered March 26, 1999, Case No. 97–4050–RDR was transferred to this court. That case now bears Case No. 96–4050–SAC.

2. The property is described as follows:

   Assuming the North Section line of the Northwest Quarter of Section 7, Township

12 South, Range 17 East, Shawnee County, Kansas as East, a tract of land beginning at a point that is East a distance of 75 feet from the Northwest corner of Northwest Quarter of said Section. Said point also being the Northwest corner of said tract; thence East a distance of 45 feet; thence South a distance of 170 feet; thence West a distance 90 feet; thence North a distance of 135 feet; thence East a distance of 45 feet; thence North a distance of 35 feet to the

pensation. Prior to entering Humphries' property, WNG did not provide prior notice, seek permission or attempt to negotiate an agreement with Humphries. Humphries also claims that WNG damaged property adjacent to the property taken to build the pipeline. WNG admits that it performed certain operations on Humphries' property, but claims that it had a legal right to do so under the Natural Gas Act.

## ISSUE

The issue in this case is whether the Natural Gas Act preempts some or all of the plaintiff's state law trespass, unlawful taking and damage to the remaining property claims.

### Preemption

■ The preemption doctrine is rooted in the Supremacy Clause, which provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2.

> Federal preemption of state law can occur in various ways. First, Congress may preempt state law by the explicit language of a federal statute. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1721, 75 L.Ed.2d 752 (1983). Second, Congress may "occupy a field" by enacting legislation so comprehensive that " 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " *Id.* at 204, 103 S.Ct. at 1722 (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)). Finally, "[e]ven where Congress has not entirely displaced state regulation in a specific area, state law is

preempted to the extent that it actually conflicts with federal law." *Id.* "Conflict" preemption can occur where compliance with both federal and state law is impossible, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). *Stilwell, Okl. v. Ozarks Rural Elec. Cooperative Corp.,* 79 F.3d 1038, 1043–44 (10th Cir.1996). "Determining whether Congress has exercised its power under [the Supremacy Clause] to preempt state law requires an examination of congressional intent." *Panhandle Eastern Pipeline Co. v. State of Oklahoma,* 83 F.3d 1219, 1225 (10th Cir.1996).

The federal government's pervasive presence in the field of natural gas is beyond peradventure. *See Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 305, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988) ("Congress occupied the field of matters relating to wholesale sales and transportation of natural gas in interstate commerce."); *Panhandle Eastern Pipeline Co.,* 83 F.3d at 1227–28 ("all state regulation of the purchasing or taking of natural gas by interstate pipeline companies has been pre-empted by the federal regulations contained in the Natural Gas Act and the Natural Gas Policy Act of 1978.... [T]hese two acts evidence Congress' intent to occupy the entire field of regulating natural gas purchases by interstate pipeline companies.") (quoting *ANR Pipeline Co. v. Corporation Comm'n of Okla.,* 860 F.2d 1571, 1581 (10th Cir.1988), *cert. denied,* 490 U.S. 1051, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989) (emphasis in original)).

### 15 U.S.C. § 717f(h)

Title 15, section 717f(h), titled "Right of eminent domain for construction of pipelines, etc." provides:

> When any holder of a certificate of public convenience and necessity cannot ac-

point of beginning and containing 0.315 acres more or less.

quire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

## Analysis

■ In enacting § 717f(h), Congress obviously intended to provide an efficient and expedient means for holders of certificate of public convenience and necessity to acquire property necessary to construct natural gas pipelines. In this same vein, Congress intended § 717f(h) to create a procedure, if followed by the holder of a certificate of public convenience and neces-

sity, which foreclosed the possibility that a disgruntled or financially motivated landowner could, directly or indirectly, grind construction of a pipeline to a halt by asserting state law claims against the holder of a certificate of public convenience and necessity. Contrary to the plaintiff's suggestion, it is unnecessary for Congress to actually use the word "preemption" in order for federal preemption to occur. *See Armstrong v. Accrediting Council for Continuing Education and Training, Inc.,* 168 F.3d 1362, 1368 (D.C.Cir.1999) ("Federal preemption can be express or implied.").

■ Had WNG followed the letter and intent of § 717f(h), the court would agree that all of Humphries' state law claims for trespass and unlawful taking would be preempted by federal law.

In this case, however, WNG did not scrupulously abide by the terms of § 717f(h). The court finds that WNG's condemnation action does not preempt Humphries' claims that existed prior to the date that WNG filed its condemnation action.[3]

Rather than even making an effort to contact Humphries in an to attempt to reach some mutually agreeable contract compensating him for the taking of his property, WNG simply entered Humphries' property and commenced construction of its pipeline. This course of conduct is troubling in several respects. First, it appears clear to the court that § 717f(h), by its language and structure, contemplates that the holder of a certificate of public convenience must attempt to reach an agreement with the owner of the prop-

---

**3.** Both parties briefed the central issues in this case with a "winner takes all" approach. Because the parties have not briefed the issue implicated by the court's ruling, at this time the court expresses no definitive opinion on the issue of precisely what point in time the damages may cease to accumulate on Humphries' state law claims. For simplicity in writing this opinion, the court assumes without deciding that Humphries' damages on his state law claims stop accumulating on the date that this court grants, if ever, the relief

sought in WNG's condemnation action. *See generally Columbia Gas v. Exclusive Natural Gas Storage Easement,* 747 F.Supp. 401, 405 (N.D.Ohio 1990) ("In normal condemnation proceedings the property is not 'taken' until the award is paid. See Rule 71A of the Federal Rules of Civil Procedure. However, where there has been an interference with the owner's use of the property prior to payment of the award, the courts may fix the date of the taking as of the date of the filing of the complaint.") (citation omitted).

erty needed to construct the pipeline *before* actually taking the needed property. "When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line ... for the transportation of natural gas ... *it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located* ..." Section 717f(h) (emphasis added). If an agreement for the value of the property interest needed for construction of the pipeline cannot be reached between the property owner and the pipeline builder, the holder of the certificate of public convenience must then proceed to court. This conclusion is supported anecdotally by a review of the cases discussing § 717f(h). In most reported cases discussing § 717f(h), if efforts to strike a deal with the land owner are unsuccessful, the pipeline builder has then proceeded to court to secure the property in a lawful manner. *See, e.g., Portland Natural Gas Transmission System v. 4.83 Acres of Land,* 26 F.Supp.2d 332 (D.N.H.1998); *Tennessee Gas Pipeline Co. v. New England Power,* 6 F.Supp.2d 102 (D.Mass. 1998); *cf. Gilbertz v. United States,* 808 F.2d 1374, 1381 (10th Cir.1987) ("Generally, pipeline companies acquire a right-of-way to construct and maintain a pipeline by condemnation proceedings or by negotiations with the landowner."). The court does not believe that WNG's post-entry offer to compensate Humphries complies with either the letter or spirit of § 717f(h) or otherwise trumps Humphries' pre-condemnation state law claims. *See generally Williams Natural Gas v. City of Oklahoma City,* 890 F.2d 255, 264 (10th Cir. 1989) ("The structure Congress has provided to litigate and resolve disputes arising under the Natural Gas Act should not be lightly disregarded."), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990).

Second, requiring the pipeline builder to first seek the court's approval of the acquisition of the property prior to entering is, on its face, more desirable than the self-help remedy invoked by WNG in its taking of Humphries' property. This is particularly true in light of the fact that it is apparently well settled "that the district court does have the equitable power to grant immediate entry and possession where such relief is essential to the pipeline construction schedule." *Tennessee Gas Pipeline Co. v. New England Power,* 6 F.Supp.2d 102, 104 (D.Mass.1998). Consequently, there was no reason that WNG could not have sought immediate possession of Humphries' property in this court prior to intruding on his land. Requiring the pipeline builder to first seek the landowner's approval, or if that cannot be achieved, to seek the approval of the court, would also obviate the possibility of any physical confrontation with the landowner.

This having been said, WNG correctly identifies two federal cases which ostensibly countenance the "take, then buy (with little or no penalty)" strategy invoked by WNG in this case. In *Columbia Gas v. Exclusive Natural Gas Storage Easement,* 747 F.Supp. 401 (N.D.Ohio 1990), Columbia Gas brought an action pursuant to § 717f(h) to condemn an underground natural gas storage easement beneath a tract of land owned by the defendants. As Columbia Gas' storage of gas under the defendants' property predated the filing of the condemnation action, the landowners counterclaims, seeking compensatory and punitive damages for trespass. The district court, reversing the position it had previously taken on similar issues,[4] con-

---

4. In a previous unpublished case, *Bowman v. Columbia Gas Transmission Corp.,* that same district court had allowed, over Columbia Gas' objection, a similar trespass action and permitted the jury to assess punitive damages against the gas company. In an unpublished opinion, the Sixth Circuit affirmed the award of damages in *Bowman,* holding that Colum-

cluded that "the landowner's remedies with respect to the taking of his property by the United States Government or by a private corporation authorized to exercise the power of eminent domain are controlled and limited by federal substantive law." *Id.* at 404. "Ohio law regarding the taking of property for public use is not applicable because it is preempted by federal law is dispositive of [the landowner's] counterclaim for trespass and punitive damages. It will not be allowed to proceed." *Id.* The landowners were, however, granted leave to file an amended counterclaim seeking compensatory damages for inverse condemnation. *Id.* at 406.

This court disagrees with this portion of the opinion in *Columbia Gas* because it fails to recognize that the gas company bringing the condemnation action is a private corporation, and that unlike the federal government, its only authority to condemn property is grounded in § 717f(h).

Although the plaintiff possesses the authority pursuant to Title 15 U.S.C. § 717f(h) to exercise the right of eminent domain, this right is not in itself sufficient to authorize the taking of immediate possession prior to the condemnation proceeding itself. The authority to take immediate possession conferred by the Declaration of Taking Act and similar statutes which confer the authority to take immediate possession is reserved to the United States. No statutory authority exists which would authorize a private party, such as the plaintiff, to take immediate possession of the real property prior to the condemnation proceeding. Similarly, the authority to take immediate possession of the property cannot be implied in the mere grant to the plaintiff of the right

to eminent domain because the language of Title 15 U.S.C. § 717f(h) is unequivocal. In addition, if an ambiguity were found in the statute the result would not change because statutes conferring the right of eminent domain are strictly construed to exclude those rights not expressly granted. *See* Nichols, *The Law of Eminent Domain,* Vol. 1 § 3.213(2) (3rd Ed.1980).

*Northern Border Pipeline Co. v. 127.79 Acres Land, More or Less in Williams County, North Dakota,* 520 F.Supp. 170, 172 (D.N.D.1981). Similarly, in *USG Pipeline Co. v. 1.74 Acres in Marion County Tennessee,* 1 F.Supp.2d 816 (E.D.Tenn. 1998), the district court opined:

USGP's acquisition of a FERC Certificate cloaks it with the federal power of eminent domain pursuant to § 15 U.S.C. 717f(h). However, nothing in the Natural Gas Act automatically authorizes the possessor of an FERC Certificate to take immediate possession of the property sought to be condemned prior to the condemnation proceeding. Plaintiff has not directed the Court to anything in the Act it contends grants such authority. Plaintiff argues the Court has the inherent equitable authority to order immediate possession. It cites *Northern Border Pipeline Co. v. 127.79 Acres of Land, More or Less in Williams County, North Dakota,* 520 F.Supp. 170 (D.N.D.1981) and *ITT Community Development Corp. v. Barton,* 569 F.2d 1351 (5th Cir.1978), in support of its position. *See also, Atlantic Seaboard Corp. v. Van Sterkenburg,* 318 F.2d 455 (4th Cir.1963). The court in Northern Border concluded neither Fed.R.Civ.P. 71A nor § 15 U.S.C. 717f(h) authorizes the taking of immediate possession of

---

bia Gas had failed to preserve for appellate review its contention that the property owner was limited to a cause of action for inverse condemnation and could not bring a trespass action. *See Bowman v. Columbia Gas Transmission Corp.,* 850 F.2d 692 (6th Cir.1988) (Table; available on Westlaw at 1988 WL 68890).

This court notes that in a concurring opinion, Judge Ryan apparently rejected Columbia Gas' preemption argument. *Id.* at *4 ("Lastly, having said all that, and after carefully examining the arguments regarding the merits of Columbia's two theories, I conclude that the appellee [the property owner] has the better of the arguments.").

the property to be condemned prior to the condemnation proceeding itself. However, the court determined it had the inherent power under its equitable jurisdiction to order immediate possession. After considering the plaintiff's assertion immediate possession was necessary to meet its construction deadline and to maintain its budget and finding the only legal remedy available, i.e., the condemnation proceeding itself, inadequate, the court decided the circumstances warranted the exercise of its inherent power.

*Id.* at 825. *See also Transwestern Pipeline Company v. Kerr–McGee Corp.,* 492 F.2d 878 (10th Cir.1974) (power of eminent domain afforded holders of certificates of public convenience and necessity under § 717f(h) of the Natural Gas Act does not extend to lands owned by the United States), *cert. dismissed,* 419 U.S. 1097, 95 S.Ct. 691, 42 L.Ed.2d 689 (1975). In short, this court does not believe that Congress intended the condemnation authority granted by § 717f(h) to cloak holders of certificates of public convenience and necessity with impunity to commit trespasses and other civil wrongs.

The second case cited by WNG is *Mississippi River Transmission Corp. v. Tabor,* 757 F.2d 662 (5th Cir.1985). In *Tabor,* the Fifth Circuit rejected on two separate grounds the property owner's trespass claims against the gas company for its purported use of his property as a gas storage reservoir. First, the court of appeals opined that the landowner had failed to prove that any trespass on his particular interest in the property had occurred. Second, the court of appeals, apparently relying on the following quote from *Gray v. State Through Department of Highways,* 250 La. 1045, 202 So.2d 24 (1967), concluded that even if a trespass had occurred, the property owner was entitled to no additional compensation for that trespass in addition to the condemnation award:

"[I]t makes no difference in determining the amount to be awarded that the property was appropriated and not formally expropriated. Albeit in appropriation cases the condemning authority does not obey the mandate of the law that the compensation be paid before the taking, the noncompliance of this condition precedent to the condemnation does not subject the appropriator to a penalty, for when the owner recovers just compensation, he recovers all the law gives him. To hold otherwise would be to inflict punitive damages upon the condemnor which is not permissible under our civil law system."

757 F.2d at 673 (*quoting* 202 So.2d at 30). This quote is a statement of Louisiana state law. This precedent from the Fifth Circuit is not binding on this court, nor is the court persuaded that this is a correct statement of the law that controls in this case. As previously stated, WNG's condemnation authority derives solely from § 717f(h). Consequently, it is not entitled to the benefits of § 717f(h) when it does not adhere to the procedure it sets forth. Because it chose not to follow that procedure it cannot escape the consequences of its own acts. Moreover, the court is confident that the law of Louisiana does not control in this instance. The position taken by the State of Louisiana appears to be a minority position. *See* George H. Genzel, *Award of, or pending proceedings for, compensation for property condemned, as precluding action for damages arising from prior trespasses upon it,* 33 A.L.R.3d 1132 (1970) ("Whether taking the position that a condemnation award cannot encompass damages for prior trespasses, or applying statutes to the specific effect that the compensation award shall be for value alone, the great preponderance of cases have, at the very least, recognized that the condemnation award does not necessarily include damages for prior trespasses, and that the award or the pendency of condemnation proceedings, as the case may be, does not bar an action for the prior trespass, unless trespass damages were in fact

litigated.") (footnotes omitted); *see, e.g., 5655 Acres of Land and Coal in Indiana County, Pennsylvania v. Texas Eastern Transmission Corp.,* 190 F.Supp. 175 (W.D.Pa.1960) ("It is further well settled in Pennsylvania that where a corporation having the power of eminent domain enters on land in a legally defective manner (citations omitted) the party aggrieved may sue in ejectment and trespass for damages or the party may waive the tort and treat the action as a condemnation and petition for viewers to assess the damages.").

Finally, if WNG is implicitly suggesting that this court should look to the law of the State of Kansas, Humphries' claims for trespasses prior to condemnation would seemingly survive. *See Grainland Farms Inc. v. Arkansas Louisiana Gas Co.,* 11 Kan.App.2d 402, 722 P.2d 1125 (1986) (condemnation proceeding and award does not necessarily preclude the maintenance of an action for damages arising out of prior trespass).

As a final observation, WNG makes no specific effort to demonstrate that its condemnation action in Case No. 97–4050–SAC would, under any circumstance, preempt Humphries' claims for damages to other property—property other than the tract WNG actually seeks to condemn.

In summary, WNG's motion for summary is denied. WNG's condemnation action under § 717f(h) does not preempt all of Humphries' pre-condemnation state law claims. Humphries may seek damages on his pre-condemnation state law claims against WNG to the extent that those damages are separate and distinct from the compensation he may receive in the condemnation proceedings.

IT IS THEREFORE ORDERED that WNG's motion for summary judgment (Dk.15) is denied.