Portland Natural Gas v. Martin, et al CV-98-436-JM  11/03/98  P

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**


Portland Natural Gas Transmission System

    v.                                        Civil No. 98-436-JM

4.83 Acres of Land, et al.



**O R D E R**

Before me in this condemnation action under the Natural Gas Act, 15 U.S.C. § 717f(h), are the following motions filed by defendant Frederick W. Martin:  a motion for a 90-day letter (document no. 9); a motion for relief (document no. 7), a motion to dismiss under Fed. R. Civ. P. 12(h)(3) (document no. 20); and a motion for a preliminary injunction, entitled "Motion for Alternate Temporary Restraining Order" (document no. 23).  For the following reasons, all four motions are denied.

## Background

The following facts are undisputed.  Mr. Martin owns the strip of land at issue, approximately 4.83 acres, which is part of a larger parcel of cleared and wooded farm land.  Plaintiff ("Portland Gas") is a Maine partnership that holds certificates of public convenience and necessity, issued by the Federal Energy Regulatory Commission ("FERC") in 1997.

Portland Gas instituted this eminent domain action by depositing money with the court and filing a verified complaint in condemnation against the property. Portland Gas seeks to obtain temporary easements for the purpose of constructing a natural gas pipeline, and to obtain a permanent easement for the purpose of operation and maintenance of the pipeline and related facilities.

On July 21, 1998, Portland Gas obtained an Order (document no. 4) granting its ex parte motion for immediate entry and possession. A request for reconsideration of that Order was denied on September 17, 1998 (document no. 10). Mr. Martin thereafter filed his first motion for a temporary restraining order ("TRO") and for other preliminary injunctive relief, which was denied in an Order (document no. 19) issued on September 24, 1998.

After the motion for a TRO was denied, Portland Gas actually took possession of the easements by bringing heavy equipment onto Mr. Martin's land, cutting down trees, excavating soil, burying a pipe, and bulldozing a road on the strip of land at issue. See Affidavits of Fred W. Martin (dated Oct. 9, 1998 & Oct. 19, 1998) (document nos. 24 and 28). According to Mr. Martin, a Portland Gas representative told him on October 19, 1998 that the "pipe would be past [his] property by October 28." Affidavit of Fred

2

W. Martin (Oct. 19, 1998).

## Analysis

## I.    Motion under Rule 12(h)(3) and Motion for Relief

In his motion to dismiss for lack of subject matter jurisdiction under Rule 12(h)(3), Mr. Martin contends that Portland Gas obtained a right of entry and possession in July 1998, before it complied with a condition of its FERC certificate known as "Condition 31," and before FERC had complied with the National Historic Preservation Act, 16 U.S.C. § 470f.[1] As a result, this court lacked authority to grant a right of entry and possession to Portland Gas in July 1998 and presently lacks subject matter jurisdiction over the action. Mr. Martin makes essentially the same arguments in his motion for relief.

Condition 31 is one of more than sixty environmental conditions relating to the construction and operation of the gas line project (covering, among other things, wetland mitigation, wellhead protection, cultural resources, fisheries, erosion controls, and a hazardous materials inventory), which FERC

_____

[1] This court lacks subject matter jurisdiction to review a challenge to the validity of the certificate, including any claim relating to whether FERC complied with the National Historic Preservation Act, 16 U.S.C. § 470f, or its own regulations. See Tennessee Gas Pipeline Co. v. Massachusetts Bay Transp. Auth., 2 F. Supp.2d 106, 110 (D. Mass. 1998) ("Tennessee Gas II") ("The District Court's sole charge and authority is to evaluate the scope of the FERC Certificate, and order the condemnation of property in accordance with that scope.").

3

included in an appendix to the certificate.  Condition 31 directs Portland Gas to defer construction, among other things, until it files with the Secretary of FERC certain information about cultural and historic resources.[2]

There is no dispute that Portland Gas began construction on Mr. Martin's land <u>after</u> FERC acknowledged that Portland Gas had satisfied the requirements of Condition 31.  Portland Gas received a letter from FERC, dated August 20, 1998, notifying it of FERC's determination that Portland Gas had complied with Condition 31.  Portland Gas actually entered the property and began cutting trees and clearing Mr. Martin's land more than a month after the August 20, 1998 letter was issued.

a.    **Subject Matter Jurisdiction**

Mr. Martin is mistaken in contending that subject matter

---

[2]Condition 31 provides, in pertinent part:

The applicants shall defer construction of facilities and use of all staging, storage, and temporary work areas, and new or to-be-improved access roads until:

    i.    the applicants file with the Secretary [of FERC] cultural resource reports and treatment plans, as appropriate, and the [State Historic Preservation Officer's] comments; and

    ii.   the Director of [the Office of Pipeline Regulation] reviews and approves all reports, considers the comments of the Advisory Council on Historic Preservation, and notifies the applicants in writing that they may proceed.

jurisdiction is contingent on compliance with the pre-construction conditions of the FERC certificate. The federal statute providing a cause of action to Portland Gas to pursue a condemnation action in federal district court does not contain any such limitation. A holder of a FERC certificate may bring an action in federal district court to acquire land by eminent domain if it cannot acquire the land by contract or agree on the purchase price with the landowner. See 15 U.S.C. § 717f(h).

Since Mr. Martin has not agreed to allow Portland Gas, a holder of a FERC certificate, to acquire the land at issue, Portland Gas was entitled to initiate this action under section 717f(h). Accordingly, the district court has subject matter jurisdiction over the action pursuant to 15 U.S.C. § 717f(h) and 28 U.S.C. § 1331. Portland Gas's delayed compliance with Condition 31 is not a basis for dismissing this action under Fed. R. Civ. P. 12(h)(3).

b. **Right to Enter and Possess**

The issuance of an order granting Portland Gas a right to enter and possess before Portland Gas complied with Condition 31 was within the court's authority. Courts have concluded that a landowner cannot use a FERC certificate-holder's alleged non-compliance with the conditions in the certificate to prevent a taking of private property by eminent domain. See, e.g.,

5

Tennessee Gas Pipeline Co. v. 104 Acres of Land, 749 F. Supp. 427, 433 (D.R.I. 1990) ("Tennessee Gas I").

In Tennessee Gas I, the court considered whether a gas pipeline company's failure to obtain a permit required by a FERC order prevented it from condemning land. The court concluded that, absent a stay issued by FERC, "the lack of a required permit does not prevent condemnation of land in preparation for construction." 749 F. Supp. at 433. The First Circuit denied Mr. Martin's request for a stay. Mr. Martin has not requested a stay from the D.C. Circuit and, therefore, has not obtained such a stay. In sum, there is no authority for this court to vacate its order granting Portland Gas an immediate right of entry and possession.

Mr. Martin contends that the holding in United States v. 162.20 Acres of Land, 639 F.2d 299, 305 & n.4 (5th Cir. 1981), upon which Tennessee Gas I relies, does not apply to Portland Gas, a private entity. The court in 162.20 Acres reasoned that since the initiation of an eminent domain proceeding and an immediate transfer of title is a neutral act that does not prevent the government from later complying with the consultation and review requirements of the National Historic Preservation Act, 16 U.S.C. § 470f, an allegation that an agency has not complied with the Act cannot be a defense in an eminent domain

6

action.  See 162.20 Acres, 639 F.2d at 305; accord United States ex rel. TVA v. Three Tracts of Land, 415 F. Supp. 586, 588 (E.D. Tenn. 1976).

According to Mr. Martin, the rationale for 162.20 Acres does not apply in this case because Portland Gas, a private entity, is not entitled to an immediate transfer of title under any federal law.  Since State law, N.H. Rev. Stat. Ann. ("RSA") 371:15, V, provides a holder of a FERC certificate with a right to such a "quick take," it is irrelevant whether or not such a right is available under federal law.

RSA 371:15, V, provides that after initiating an eminent domain proceeding, the pipeline company may immediately "enter upon and take possession of the real estate upon providing such security as justice may require to pay any damages occasioned by the entry."  Pursuant to RSA 371:15, V, and in accordance with 15 U.S.C. § 717f(h), this court had the authority to grant Portland Gas's motion for immediate entry and possession, without reference to whether it had complied with pre-construction conditions.

Mr. Martin contends that the procedures specified in RSA 371:15, V, are available only to pipeline companies that file their actions in State court under RSA 371:15, I, and are not available to companies that file in federal court under 15 U.S.C.

7

§ 717f(h).  The Natural Gas Act, however, provides that "[t]he practice and procedure in any action or proceeding in the district court . . . shall conform as nearly as may be with the practice and procedure in [a] similar action or proceeding in the courts of the State where the property is situated . . . ."  15 U.S.C. § 717f(h).  RSA 371:15, V, is thus properly construed in this context to provide the same substantive right to a quick take, whether the forum is a State or federal court.

Therefore, the principle underlying 162.20 Acres and Tennessee Gas I applies in this case.  Compliance with FERC conditions cannot be used as a defense to the right of eminent domain and cannot be cited to divest the court of the authority to grant immediate entry and possession to the holder of a FERC certificate.  Because Portland Gas followed the pertinent procedures required under RSA 371:15, V, it was entitled to an order granting it the right to immediate entry.  The court had the requisite authority to grant Portland Gas's motion and will neither dismiss the case nor vacate the July 1998 Order.

## II.  Motion for 90-Day Letter

In his motion for a 90-day letter, Mr. Martin seeks an order requiring Portland Gas to provide him with written notice before requiring him to move his farming operation from the land at issue, in accordance with 42 U.S.C. § 4651(5) and certain

8

regulations. In addition, Mr. Martin seeks an order "remov[ing]" Portland Gas "from possession of" the easements. Mr. Martin maintains that he harvests timber from a larger parcel of land that includes the property at issue, so that the property at issue qualifies as a "farm operation" pursuant to 42 U.S.C. § 4651(5).[3] Portland Gas's removal of trees from the easement is allegedly a circumstance in which Mr. Martin is "required to move his business or farm operation," for which prior notice should be provided.[4] Id.

---

[3]The cited statute provides, in pertinent part:

[H]eads of Federal agencies shall, to the greatest extent practicable, be guided by the following policies:
. . .
        (5) The construction or development of a public improvement shall be so scheduled that, to the greatest extent practicable, <u>no person lawfully occupying real property shall be required to move from a dwelling . . . or to move his business or farm operation, without at least ninety days' written notice</u> from the head of the Federal agency concerned, of the date by which such move is required.

42 U.S.C. § 4651(5) (emphasis added).

[4]In light of Mr. Martin's admissions that Portland Gas has entered his land and cut trees, and that Portland Gas estimated that it would be done placing pipe on his property by October 28, 1998, his motion for prior notice would appear to be moot. Because Mr. Martin has also requested an order removing Portland Gas from the easements, however, the merits of the motion are addressed below.

9

## A.    Federal Statute

As discussed more fully in my September 24, 1998 Order, the statute at issue, 42 U.S.C. § 4651(5), does not create any substantive rights and cannot be cited as an impediment to an eminent domain action.  See Tennessee Gas Pipeline Co. v. New England Power, C.T.L., Inc., 6 F. Supp.2d 102, 104-05 (D. Mass. 1998) ("Tennessee Gas III"); see also 42 U.S.C. § 4602(a). Therefore, the federal statute provides no basis for relief.

## B.    Federal Regulations

Mr. Martin also contends that he has a right to prior notice under 49 C.F.R. Part 24, the regulations promulgated to implement the Uniform Relocation Assistance and Real Property Acquisition Policies of 1970, 42 U.S.C. §§ 4601-4655.  As discussed below, the regulations are not applicable to Mr. Martin's circumstances and, therefore, do not provide any basis for granting the motion.

The regulation cited by Mr. Martin, 49 C.F.R. § 2.203(c)(1), provides that "no lawful occupant shall be required to move unless he or she has received at least 90 days advance written notice of the earliest date by which he or she may be required to move."  See also 42 C.F.R. § 24.203(a)(3) (similar).  This regulation applies to the relocation of "displaced persons," see 49 C.F.R. § 24.202, which is further defined in a manner that

clarifies its inapplicability to Mr. Martin's circumstances.

The pertinent part of the regulatory definition of "displaced persons" is

> <u>any person who moves from the real property or moves his or her personal property</u> from the real property:
> . . .
> > (iii) As a direct result of . . . the acquisition, rehabilitation or demolition of, in whole or in part, other real property on which the person conducts a business or farm operation . . . . <u>However, eligibility for such person under this paragraph applies only for purposes of obtaining relocation assistance advisory services under [49 C.F.R.] § 24.205(c) and moving expenses under [49 C.F.R.] § 24.301, § 24.302 or § 24.303.</u>

49 C.F.R. § 24.2(g)(1)(iii) (emphasis added).

The cited definition contains a limitation that makes Mr. Martin's motion unavailing:

> [E]ligibility . . . applies only for purposes of obtaining relocation assistance advisory services under <u>[49 C.F.R.] § 24.205(c) and moving expenses under [49 C.F.R.] § 24.301, § 24.302 or § 24.303.</u>

49 C.F.R. § 24.2(g)(1)(iii) (emphasis added). Mr. Martin has not argued that he is entitled to relocation assistance or payments for moving expenses. Since the regulation regarding prior notice of a date certain, 49 C.F.R. § 24.203(c), is included within a subpart of the regulations that governs the provision of relocation payments and other relocation assistance, <u>see</u> 49 C.F.R. § 24.201, Mr. Martin has not demonstrated that he is entitled to such notice.

11

Moreover, Mr. Martin does not satisfy the regulatory definition of a displaced person. Mr. Martin lives in Massachusetts, not on the property. This is clearly not a case involving the wholesale relocation of Mr. Martin's farm or business. At issue is the removal of trees from a strip of land included within a larger parcel from which Mr. Martin periodically harvests timber. Mr. Martin will likely be able to harvest timber from the remainder of the parcel. As Portland Gas has conceded in its memorandum in opposition to Mr. Martin's first motion for a TRO, Mr. Martin may be compensated in this proceeding for the value of timber removed from his property, along with the compensation he may receive for the loss of ornamental trees, damage to a spring, and alteration of the property's character because of a permanent utility corridor. See generally RSA 371:15, III (owner may recover damages).

Mr. Martin's contention is that Portland Gas's cutting of standing timber satisfies the part of the cited definition referring to the movement of Mr. Martin's "personal property." Mr. Martin's reading of the regulation is not consistent with the meaning of "personal property" implied in the regulatory provision cited in the definition relating to the payment for moving expenses for any "farm operation which qualifies as a displaced person," 49 C.F.R. § 24.303. The regulation, which

12

relates to such matters as storage, packing, and disconnecting personal property, contains no provision suggesting that Portland Gas's removal of growing timber from a right of way acquired by a quick take procedure, is intended to make Mr. Martin into a "person who moves . . . his or her personal property," 49 C.F.R. § 24.2(g).  Cf. Plumer v. Prescott, 43 N.H. 277, 278 (1861) (until cut, trees "may be regarded as part of the soil in which they are rooted," not as personal property); accord Nutting v. Stratton, 77 N.H. 79, 80, 87 A. 251, 251-52 (1913).  Thus, Mr. Martin is not a displaced person under the regulations.  Because Mr. Martin's case is not covered by the regulations, he is not entitled to any relief based on these regulations.

B.    **Entitlement to Preliminary Injunctive Relief**

Even if the regulations could be construed as providing Mr. Martin with a right to earlier notice of a specific date, an order removing Portland Gas from possession at this time would not be a proper remedy, based on the evidence of equitable factors produced by Mr. Martin in support of his request for such preliminary relief.  See Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) ("a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law"); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991) (setting forth four-part test for preliminary

13

injunctions, including irreparable harm and balance of equities).

In this case, as in most eminent domain cases, "just compensation will take the form of money to compensate a property owner for a physical invasion." Wisconsin Cent. Ltd. v. Public Serv. Com'n, 95 F.3d 1359, 1369 (7th Cir. 1996). "With the question being one of monetary compensation, a plaintiff would be hard pressed to demonstrate either irreparable harm or an inadequate remedy at law." Id. The harm alleged by Mr. Martin includes the removal of trees from a tree farm and the clearing of a utility corridor on a portion of a farm dating back to the colonial period. Trees can be replanted, and cleared land revegetated. Compensation for losses is available in the award of just compensation or damages. Therefore, in this case, Mr. Martin has not made a sufficient showing of irreparable harm.[5] USG Pipeline Co. v. 1.74 Acres, 1 F. Supp.2d 816, 825 (E.D. Tenn. 1998) ("If Defendants are successful in having the FERC's decision overturned, Defendants' property could be restored

_____

[5]A West Virginia case cited by Mr. Martin, Bettman v. Harness, 26 S.E. 271 (W. Va. 1896), regarding a claim of competing owners of mineral rights relating to the pumping of oil and gas from private land, is inapposite. The Bettman court found that equitable relief is not available in an ordinary trespass action, but is available to enjoin the removal of oil and gas, an exhaustible resource. Bettman did not concern an eminent domain case such as this, where diminished property value may be compensated, cleared land running through a tree farm can be restored, and buried pipe can be removed.

substantially to the condition it was in prior to the incursion. Monetary damages could also be awarded to compensate Defendants for the trespass to their properties, as well as any damages to their properties.").

Mr. Martin has not demonstrated any prejudice as a result of the lack of notice of a date certain, while counsel for Portland Gas represented as to Mr. Martin's first request for a TRO that his client would suffer increased costs if the project were delayed or rerouted. Mr. Martin was aware that Portland Gas intended to obtain the easements months before construction began. On the date on which he received Portland Gas's motion to enter, more than a month before Portland Gas actually started to cut down trees, Mr. Martin was notified of Portland Gas's intention to enter his land "immediately."

Mr. Martin has also not demonstrated how an injunction to rectify lack of notice would be anything more than a paper exercise since Portland Gas could resume construction after the notice period expired. While Mr. Martin contends that the D.C. Circuit will soon issue a stay of further construction because his property may be included on the National Register of Historic Places, the prospect of such a stay remains speculative. Mr. Martin has no right to an automatic stay. See 15 U.S.C. § 717r(c). Mr. Martin has not filed a request for a stay with

15

the D.C. Circuit.  He has represented that he will not do so until he receives a ruling from the Department of the Interior regarding the inclusion of his property on the Register.  The D.C. Circuit may deny his stay application.  Therefore, even if the cited regulation on notice covered Mr. Martin, ordering Portland Gas off the easements for failing to provide notice of a date certain when trees would be cut would not be an appropriate equitable remedy, in light of the evidence in the record.

## III. Motion for Alternate TRO

In his second motion for a TRO or other preliminary injunctive relief, Mr. Martin cites two bases for ordering Portland Gas off of the land at issue.  First, Mr. Martin contends that the July 1998 Order granting a right of entry and possession to Portland Gas was invalid because of Portland Gas's noncompliance with Condition 31, and FERC's noncompliance with the National Historic Preservation Act, 16 U.S.C. § 470f, at the time the Order was issued.  As explained previously, the argument as to Condition 31 is without merit, and, since it relates to the validity of the FERC certificates, the claim as to section 470f is not within the district court's subject matter jurisdiction, see 15 U.S.C. § 717r.

Mr. Martin's second basis for such preliminary relief is that Portland Gas has failed to comply with Conditions 17 or 19

16

of its certificate.[6] These conditions relate to certain pre- and post-construction reports relating to well or spring locations and yields.[7] In its August 20, 1998 letter to Portland Gas, FERC specifically authorized construction of the pipeline across Mr. Martin's land, subject to compliance with Conditions 17 and 19.

Mr. Martin cites no authority for the proposition that the district court has the jurisdiction in an eminent domain proceeding under the Natural Gas Act to ensure that a holder of a FERC certificate has complied with FERC's conditions. This

---

[6]Mr. Martin's motion refers only to Condition 17. His arguments suggest, however, that his concerns relate in fact to Condition 19. At the hearing on his motion, counsel for Portland Gas represented that it had provided evidence to Mr. Martin on the morning of the hearing demonstrating that Portland Gas had fully complied with Condition 19.

[7]Conditions 17 and 19 provide as follows:

17. Prior to construction the applicants shall file with the Secretary [of FERC] the locations of all wells and springs identified within 150 feet of the construction work area. The applicants shall indicate the distance and directions of each well or spring from both the pipeline centerline and construction work area and indicate whether they are public or private.
. . .
19. The applicants shall conduct, with the well- or spring-owner's permission, pre- and post-construction monitoring of well or spring yield and water quality for all wells or springs within 150 feet of pipeline construction activities that are used for drinking water. Within 30 days of placing the facilities in service, the applicants shall file a report with the Secretary discussing any complaints concerning well or spring yield or water quality and how they were resolved.

17

court's jurisdiction extends solely to examining the scope of the certificate and ordering condemnation of property as authorized in the certificate.  See Tennessee Gas II, 2 F. Supp.2d at 110 (D. Mass. 1998).  The district court does not have the authority to enforce compliance with pre-construction conditions.

The relevant statute and regulations place the power to police compliance squarely upon FERC.  FERC's authority for imposing such conditions is provided in 15 U.S.C. § 717f(e): "The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."  Section 717m authorizes FERC to investigate violations of provisions of FERC's orders, see 15 U.S.C. § 717m(a), and FERC regulations specify procedures for such investigations, see 18 C.F.R. §§ 1b.1 - .20.  In accordance with 18 C.F.R. § 1b.8, any person may request that FERC institute an investigation.  FERC can bring an action in district court to enforce its orders.  See 15 U.S.C. § 717s(a).

Condition 2 of the certificate clearly specifies that the agency has the authority to police compliance with Conditions 17 and 19.  Under Condition 2, FERC declared that the Director of the Office of Pipeline Regulation ("OPR") has the delegated authority to ensure compliance, to issue stop work orders, to

18

modify the conditions, or to impose additional measures, as necessary "to assure continued compliance with the intent of the environmental conditions as well as the avoidance or mitigation of adverse environmental impact resulting from project construction and operation." Therefore, Mr. Martin may complain to OPR should he believe that Portland Gas has not complied with FERC's conditions. OPR may thereafter investigate and issue an appropriate order, including a stop work order. Mr. Martin may appeal any order issued by FERC to the Courts of Appeals in accordance with 15 U.S.C. § 717r.

Under the doctrine of exhaustion of administrative remedies, Mr. Martin must present his concerns to FERC first. The doctrine, in the context of cases where Congress has not required exhaustion, is applied to prevent resort to judicial relief until after prescribed administrative remedies have been exhausted. See Portela-Gonzalez v. Secretary of the Navy, 109 F.3d 74, 77 (1st Cir. 1997).

This case presents no facts justifying a departure from the procedure of allowing the agency to deal with the issue first. See id. (factors justifying relaxation of exhaustion doctrine include risk of unreasonable delay, particularly if such delay may result in irreparable harm, lack of agency procedures to grant meaningful redress, or agency bias). While Mr. Martin

19

represented that he telephoned FERC's enforcement office, Mr. Martin has not shown that he followed the procedures set forth in 18 C.F.R. § 1b.8 for filing a complaint.  He has neither alleged FERC bias, nor provided evidence on which I can find a likelihood of unreasonable delay.

While Mr. Martin maintains that construction of the pipeline may result in irreparable harm to an aquifer (because gravel used as a bed for the pipeline "may well conduct the flow of water away from the spring"), he has not advanced an argument that complaining first to FERC will result in irreparable harm.  His argument is rather that this court's schedule for considering his TRO motion entailed delays that probably already resulted in such irreversible injury.  The upshot is thus that the entire issue of irreparable harm may be moot at this time, not that Mr. Martin has no obligation to present his complaint to FERC in the first place, pursuant to FERC's regulations and Condition 2.

FERC is not a party to this proceeding.  FERC has declared that its Office of Pipeline Regulation has the authority to issue a stop work order under Condition 2.  FERC has the fact-finding ability and the flexibility that the court lacks in this context to police compliance, to modify existing conditions, or to impose additional measures to ensure that the intent of the environmental conditions will be met.  Mr. Martin's recourse for

20

his concerns thus lies with FERC in the first instance.

Finally, Mr. Martin argues that this court should exercise its inherent authority to issue preliminary relief in order to preserve his ability to challenge FERC orders in the D.C. Circuit. Since the D.C. Circuit has held that a similar challenge was not moot because of an allegation that an operational pipeline continued to harm aesthetic interests, see Moreau v. FERC, 982 F.2d 556, 566 n.4 (D.C. Cir. 1993), Mr. Martin will likely be able to pursue his claims in the D.C. Circuit, even if construction on his land is completed.

Therefore, in light of Mr. Martin's failure to demonstrate that this court has jurisdiction in this context to review Portland Gas's compliance with the certificate conditions, Mr. Martin has failed to demonstrate a substantial likelihood of prevailing on the merits. Since this is the sine qua non of the quadripartite test for granting a preliminary injunction, Mr. Martin's motion for an alternate TRO is denied. See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (citing Lebeau v. Spirito, 703 F.2d 639, 645 (1st Cir. 1983)).

## Conclusion

Mr. Martin has demonstrated that he is not interested in exploiting his farmland for profit in this litigation. He has represented that he has not subdivided his land or attempted to

21

change its historical land uses.  His preservation motive is evident in his effort to have his property listed on the National Register of Historic Places.

This court's jurisdiction is limited.  The primary purpose of an eminent domain proceeding is to provide just compensation and damages, as appropriate, to affected landowners.  Even the potential loss of aesthetic or cultural values that Mr. Martin perceives to be incalculable may be compensated.  See, e.g., United States ex rel. TVA v. Easement in Logan County, 336 F.2d 76, 80 (6th Cir. 1964) (upholding calculation of lost aesthetic value resulting from erection of power lines on farm property); cf. generally Annotation, Unsightliness of Powerline or Other Wire or Related Structure, as Element of Damages in Easement Condemnation Proceeding, 97 A.L.R.3d 587 (1980).

For the reasons set forth above, Mr. Martin's motion for a 90-day letter (document no. 9), his motion under Rule 12(h)(3) (document no. 20), his motion for relief (document no. 7), and his motion for an alternate TRO (document no. 23) are all denied.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: November 3, 1998

cc:  Frederick W. Martin, pro se
     Michael D. Ramsdell, Esq.

22